## BLOCK *v.* SMITH.

Opinion delivered November 16, 1895.

SALE OF LAND—ENFORCING CONTRACT IN EQUITY.—Where a vendee of land agrees to execute certain notes to the vendor, and through inadvertance fails to do so, he will be liable in equity as if they had been executed.

CONSTRUCTION OF CONTRACT—ELECTION OF VENDEE TO BECOME TENANT.—Where a bond for title provides that, on default in payment of either of the purchase money notes, the vendee will pay certain rent notes, the vendee, by making default in the payment of any one of the purchase money notes, elects to become a tenant of the vendor, and liable on the notes.

LANDLORD'S LIEN—ASSIGNMENT of a rent note does not carry with it the landlord's lien.

Appeal from Cross Circuit Court in Chancery.

JAMES E. RIDDICK, Judge.

STATEMENT BY THE COURT.

In 1889, appellees, R. M. Smith and C. M. Hamilton, then engaged as a partnership in a mercantile business, and being the owners of the north part of the southwest quarter of section 33 in township 7 north, of range 4 east, and the north half of private survey 494, township 6 north, and of range 4 east, in Cross county, Arkansas, bargained and sold the same to appellant, Sam Benson, for the sum and price of $2,000, to be paid in five equal installments, due and payable on the 15th days of December, 1889, 1890, 1891, 1892 and 1893, respectively, and executed and delivered their bond for title on the payment of the purchase money. Five (5) notes were executed and delivered to Smith & Hamilton in pursuance of said bargain and sale.

The contract of sale is as follows, to-wit : "Know all men by these presents, that we, C. M. Hamilton and R. M. Smith, are held and firmly bound unto Sam Benson in the sum of $4,000, for the payment of which we bind ourselves, our heirs and assigns, firmly by these presents. Witness our hands and seals, this 2d day of February, 1889. Whereas, the said Sam Benson this day purchased of the said C. M. Hamilton and R. M. Smith the following tract of land in the county of Cross, and state of Arkansas : [described as in appellee's complaint] and agreed to pay therefor the sum of $2,000 in the following manner : $400 December 15, 1889; $400, with 10 per cent. interest, December 15, 1890 ; $400, with 10 per cent. interest, December 15, 1891 ; $400, with 10 per cent. interest, December 15, 1892 ; and $400, with 10 per cent. interest, December 15, 1893, —which several amounts are evidenced by five promissory notes, due and payable as above stated. In default of the payment of either of said notes, when due, the said Sam Benson this day executes five rent notes of even date herewith,

and due and payable on or before January 1st, 1890, January 1st, 1891, January 1st, 1892, January 1st, 1893, and January 1st, 1894, with interest on same at the rate of 10 per cent. per annum from date. Now, if the said C. M. Hamilton and R. M. Smith shall, on the punctual payment of said notes, and of all the taxes legally assessed against said land, and the surrender of this instrument, convey or cause to be conveyed to the said Sam Benson, his heirs or assigns, the above described premises, then this obligation to be void ; otherwise not. In witness whereof we have hereunto set our hands and seals the day and year above mentioned. R. M. Smith. (Seal.) C. M. Hamilton. (Seal.)"

The contract of sale was delivered to Benson, and, it appears, continued in his possession, and that of his co-appellant, Block, up to the trial of the cause in the court below. The principal of each of the rent notes referred to appears to have been $150. Benson paid the first vendor's note of $400 in due time, but paid no other, and continued in possession. Some time afterwards appellants, Smith, Graham and Jones, bought out the firm of Smith & Hamilton, and, the testimony is, "succeeded them in business, and were the owners of all rights under the contract with Benson." There does not appear any deed, however, from Smith & Hamilton to Smith, Graham and Jones, conveying their real estate. R. M. Smith appears to be the person named as a member of the old firm, and as a member of the succeeding firm. Smith, Graham & Jones, claiming to occupy the place of Smith & Hamilton, and to be the landlord of Benson, instituted this suit on the lost rent note of 1892, calling for the sum of $150, claiming that Benson had abandoned his purchase under the terms of the contract, and was obligated thereby to pay said rent. This proceeding was instituted on the equity side of the docket, for the reason, as alleged, that appellant

Block had purchased of Benson eight or ten bales of cotton of that year, produced on said land. Smith & Hamilton, by consent, were made parties plaintiff. Decree for plaintiffs, and defendants appealed.

*J. D. Block*, for appellant.

1. Benson did not contract to pay rent for the year 1892 in any event, or upon any contingency. In equity cases, this court considers the evidence, and makes such findings as the chancellor should have made. 34 Ark. 212; 41 *id.* 292; 43 *id.* 307. The burden is on appellees to show a tenancy on the part of Benson for the year 1892, thereby obligating him to pay rent. There is no proof to this effect, unless it be in the recital of the bond for title, and of Smith. The clear preponderance is against the contention.

2. The landlord's lien is purely statutory, and *personal* only. Sand. & H. Dig. sec. 4794; 39 Ark. 560. The relation in this case was that of vendor and vendee. 54 Ark. 16; 27 *id.* 61.

3. A mere default in paying the purchase notes could not change the relations of the parties. It must be that the forfeiture provided for in the bond is for appellees' benefit, to be claimed or waived at their election. 65 Cal. 596; 52 Am. Rep. 310. There must be a clear election by some substantive act, or the right is waived. There is a marked distinction between a *precedent* condition to the vesting of an estate and a subsequent condition going to defeat an estate already vested. It is this which distinguishes this case from 54 Ark. 16 and 48 *id.* 413. The vendor's *election* to defeat the sale was not considered in these cases, for it did not arise. In this case, there is no proof whatever of such election, and the relation of vendor and vendee continued, and there could be no lien. See 90 Am. Dec. 230; 20 N. W. 393; 24 N. W. 378; 29 *id.* 152.

4. The vendee is entitled to notice that the vendor intends to claim a forfeiture of the sale and a tenancy thereafter. There can be no summary declaration of forfeiture. A mere failure of the vendee to make payments is not enough. 30 N. W. 413; 16 *id.* 153; 3 Oh. 335; 56 Ark. 107; 96 N. Y. 477, and cases *supra.*

*N. W. Norton,* for appellees.

1. The provisions as to rent are as much a part of the contract as those relating to purchase and making a deed. Benson took possession *under the contract,* and it is only necessary to construe the contract in the light of what the proof shows the parties have done under it. The contract cannot be distinguished from that in 48 Ark. 413. In that case the purchaser was to pay the first purchase note. In this case the purchaser is to pay $150 rent upon failure to pay *either* purchase note when due. There is no question of *forfeiture* here. Benson was entitled to five years' possession as tenant or purchaser. As he failed to pay the purchase notes, he elected to hold possession subsequently as tenant, under the terms of his contract.

2. The bond recites the execution of five rent notes. Benson is estopped to deny that he executed them. But equity treats that as done which should have been done, and this court will consider the case as if the five notes were executed.

BUNN, C. J., (after stating the facts). The first question that presents itself for our consideration is, was there an abandonment of the purchase, and an election to stand on the alternative part of the contract, to-wit, the lease? By their suit plaintiffs elected to proceed under the lease or rent clause of the contract. The appellants, by their contention, deny that plaintiffs below (and appellees here) had any election in the matter, and from that standpoint contend that "the burden is on appel-

lees to show, by a preponderance of the testimony, some sort of contract whereby Benson became their tenant of the premises for the year 1892, and obligated himself to pay rent therefor."

In the first place, as to the four absent rent notes, we think that all of the notes for the rent were either given to Smith & Hamilton by Benson, and afterwards all except the one were lost or mislaid by them, so that they could not be produced on the trial; or else that, by inadvertence, they were not actually executed and delivered, as was agreed upon, and as was intended, by the terms of the contract, to be executed. In either case, it is but just and equitable that the appellant should be held bound just as if the note of 1892, as well as the other absent notes, had been produced in court, because in equity that which was agreed to be done, and ought to have been done, as a part of the contract, is to be considered as done.

*Equity regards that as done which ought to be done.*

It was said in *Ish* v. *Morgan*, 48 Ark. 415: "If the contract shows that the defendant was in under an agreement to purchase, the idea of a tenancy was rebutted, and neither Hampton, nor those succeeding to his rights, could evict him by the summary process of unlawful detainer, although he had not strictly complied with the contract of purchase. But if, on the other hand, the meaning of it is, that he is to pay rent, or a compensation for the use of the land, then he was a tenant, and as he held over after the expiration of his term, he could be evicted by the remedy here adopted. The first stipulation of the contract is one of purchase and sale. It binds the vendor to convey to the defendant; but to the terms of this agreement there is annexed the condition that, in case of failure in the performance of the agreement to pay the first installment of purchase money, the intended vendee shall thereafter pay rent for the use of the land. It was certainly com-

*Vendee held to have elected to become tenant.*

petent for the parties to enter into a binding agreement
of this nature.   The vendor, being unwilling to take
the hazard of losing both principal and interest of the
purchase price, and the rent of the land as well, may
make a sale upon condition, and give the vendee an
option to hold as purchaser or as tenant after a given
day.   The vendee here has in effect agreed that his
rights shall depend upon the scrupulous adherence to
the engagement he made to pay the purchase price, and
that time should be a material consideration in the con-
tract.''   The vendee in that case, having failed to pay
the first installment of purchase money when due, was
held in effect to have, by his failure, elected to become
the tenant of the vendor, under the rent clause of the
contract, and was subjected to the burden of a mere ten-
ant. It is apparent that a contract may be drawn in which
the vendor might have the option to stand on either
clause after default by the vendee.   But it is unneces-
sary to do more than suggest this here, since we hold
that by the absolute terms of the contract now under
consideration the option was with the vendee, and by
his default in payment of either of his purchase money
notes when due, he has made his election.   So, then, it
required no evidence on the part of the plaintiffs to
establish their right of action on the rent note, except
that default in payment of some one of the purchase
money notes had been made, and that they were the
legal owners of the note sued on.   That default in the
purchase money had been made by appellants is shown
without controversy, and, that being the case, the right
of action in the owners of the rent notes follows as a
conclusion upon a proper construction of the contract.

The doctrine of the case of *Ish* v. *Morgan, supra,*
is in effect re-affirmed in *Quertermous* v. *Hatfield,* 54
Ark. 16, for the doctrine in both cases is simply that
men are bound by the terms of their contracts, which

they may lawfully make, and that these contracts are such as they lawfully may make.

It is contended, under this head, that "the mere failure of the defendant (Benson), therefore, to make payment at the time named did not extinguish his equitable rights." That is true, at least in most cases, where the defeasance is absolute, and no alternative contractual relation is created or provided in the contract itself; and this distinction will appear by a close examination of nearly all, if not quite all, the authorities cited by them in support of the contention. Thus, differently from those in the case at bar, do the facts appear in the following cases cited by appellant: *Converse* v. *Blumrich*, 14 Mich. 109; (90 Am. Dec. 230) *Sornborger* v. *Berggren*, 30 N. W. (Neb.) 413; *Coles* v. *Shepard*, 16 N. W. 153 (Minn.); *Orr* v. *State*, 56 Ark. 107; *Gibbs* v. *Champion*, 3 Ohio, 335; *O'Connor* v. *Hughes*, 29 N. W. (Minn.) 152; and *Duryee* v. *Mayor*, 96 N. Y. 477.

In *C. B. & Q. Ry. Co.* v. *Skupa*, 20 N. W. (Neb.), 393, and *Robinson* v. *Cheney*, 24 N. W. (Neb.), 378, there are apparent likenesses to the case at bar, but each of them seems to have gone off on the manner in which the vendor declared the forfeiture, rather than the existence of an alternative contract that should or should not have been acted upon. In the first of the two cases, the court merely construed a peculiar statute of Nebraska on the subject of unlawful detainer; and in the second case, the equities rendered a forfeiture of the contract of purchase unconscionable under the peculiar state of facts.

Much of the discussion, in those cases where it is provided that on failure of the vendee to pay installments of the purchase money the vendor may treat the contract of sale as at an end, is with reference to the effect of a provision that time shall be of the essence of the contract, always designed for the purpose of giving

an option to the vendor to declare a forfeiture of the contract of purchase on default of performance on the part of the vendee. We have no occasion to enter into such a discussion, for it is altogether foreign to the case under consideration.

The more difficult question for us to determine grows out of the fact that the rent note sued on, and which is sought to be made a lien on certain cotton raised by Benson on the lands in question during the year 1892, was purchased by appellees, Smith, Graham & Jones, from their co-appellees, before the institution of this suit. It is contended by appellants that the landlord's lien for rent on the crop of the tenant is personal to himself, and is not assignable, so as to vest the right of action as to the lien in the assignee. This is certainly true, and is the doctrine of *Varner* v. *Rice*, 39 Ark. 344, *Nolen* v. *Royston*, 36 Ark. 561, and *Roberts* v. *Jacks*, 31 Ark. 597. That is to say, it goes without question or controversy, in this state, that the assignee of a rent note has his action at law for recovery on the note, but has no right at law or in equity to have the landlord's lien enforced in his favor; for, as has been said, the lien is personal to the landlord himself, and is not assignable; or, as stated by this court in *Nolen* v. *Royston*, *supra*, "is not assignable, so as to give a right of action in the assignee."

The only evidence of the transfer of these rent notes, or rent claim, by Smith & Hamilton to Smith, Graham & Jones, is the testimony of Smith, a member of each of the firms and partnerships, who simply states "that, under the terms of this contract, they (he and Hamilton) claimed that Benson was their tenant of the premises described in the complaint in the year 1892; that the land they were seeking to recover rent for is the same land they had sold Benson under this contract; that Smith, Graham & Jones succeeded

Hamilton and himself in business, and were the owners of all rights under the contract with Benson." Now, whether this language is to be construed to mean that the firm of Smith, Graham & Jones are the assignees and absolute owners of the rent notes; or "are the owners of all rights (of Smith & Hamilton) under the contract with Benson," as the witness has it, is a ques-- tion of fact about which we have had some difficulty in coming to a conclusion. If the one is true, the other cannot be true, because if the note has been absolutely assigned, the legal and equitable right, once united in Smith & Hamilton, have been separated, and in that case Smith, Graham & Jones have the sole and exclusive right to the remedy to recover the debt, and nothing more; the court holding that the evidence shows there has been an absolute assignment or transfor of the debt.

The decree is affirmed as to the debt against Benson, and reversed as to the lien, and also as to the debt against Block.