## MORRIS *v.* GREEN.

### Opinion delivered May 27, 1905.

1. CONTRACT—VALIDITY.—A contract for the sale of land is valid which provides that upon the payment of each of four notes given for the purchase money, with accrued interest and the taxes on the land, the vendor will execute a deed for the land to the vendee, but that in case of default in the first payment all the notes are to become due, and that payments thereafter made are to be considered as rent. (Page 412.)

2. FORFEITURE—RELIEF.—Where a contract for the sale of land provided that the purchase money should be payable in installments, and that in case of default in the first payment all the notes should become due, and that subsequent payments should be considered as rent, the agreement is simply one for payment of money, and the forfeiture incurred by its nonperformance will be relieved against on payment of the debt, interest and cost. (Page 414.)

3. ESTOPPEL—FORFEITURE—WAIVER.—One entitled to enforce a forfeiture may, by waiver or acquiescence, preclude himself from insisting on its enforcement.   (Page 414.)

4. SAME—FORFEITURE.—A business man entered into a contract for the sale of a tract of land, payable in installments, to an ignorant negro which provided that, if default was made in the first purchase money note, the sale should be forfeited, and the transaction be treated as a lease; the first note fell due three days after date of the contract; the vendor knew, at the time the contract was entered into, that the purchaser could not pay the first note when it fell due, but permitted him continuously and substantially to improve the land, and accepted payments from him, knowing that he believed that such payments were reducing the debt on the land, and kept his notes, negotiable and not due, for a year after the alleged forfeiture before notifying him that the purchase contract was forfeited. *Held,* that the vendor was estopped to rely upon the forfeiture.  (Page 414.)

Appeal from Lonoke Chancery Court.

JOHN FLETCHER, Special Judge.

Reversed.

*Oliphint & Miles,* for appellant.

It is the duty of the court to inquire into the facts and merits of each case, and decide it as they may direct.   3 Par. Contr. 351; 48 Ark. 413; 56 Miss. 670; 54 Ark. 16; 61 Ark. 266.

*P. C. Dooley* and *Pugh & Wiley,* for appellee.

Equity will not lend its aid to enforce a forfeiture.   33 Ark. 151; 66 Ark. 167; 27 Ark. 61; 32 Ark. 377; Bisp. Eq. 238; Pom. Eq. Jur. § 459; 4 Kent, 130; 59 Ark. 408; 4 Johns, 415. Appellant has not taken the steps necessary to enforce a forfeiture.   18 Am. & Eng Enc. Law, 381; 29 Conn. 339; 1 How, 217; 15 Wall, 471; 140 U. S. 33; 59 Ark. 409; 46 U. S. 243; 59 Ark. 409; 29 Conn. 339; 4 Cush. 182; 6 Ire. 65; 17 Johns. 66. Appellant by his conduct waived any forfeiture, 96 U. S. 234; 59 Ark. 405; 134 U. S. 69; 29 Am. & Eng. Enc. Law, 686; 88 Ill. App. 136; 51 Barb. 186; 48 Ia. 393. Equity will relieve from a forfeiture, if there is any.   59 Ark. 405; 11 Met. 112. Appellee is entitled to specific performance.

134 U. S. 69; 30 Minn. 446; 74 Mich. 498; 14 Pet. 172; 128 U. S. 414; 28 Am. Dec. 608.

HILL, C. J. Morris sold Eli Green a forty-acre tract of land for $480. This agreement was verbal, made about March 1, 1897, and no written evidence of the contract was to be made until a payment on purchase price was made. Green went into possession at once, and commenced improving the land. On the 28th of October, 1897, Green paid Morris $45 on the purchase price, which payment was satisfactory to Morris, who then drew a written contract between them. This contract provided for the payment of the $480 in four equal annual installments, evidenced by four notes executed by Green, due November 1, 1897, November 1, 1898, November 1, 1899, and November 1, 1900.

The contract provided that, on the payment of each of said notes with accrued interest and the taxes upon the land, Morris would execute a deed therefor to Green, and in case of default upon the first payment all the notes were to become due and payments made on the purchase price were to be considered as rent.

The contract on the face of it was a valid one. *Ish* v. *Morgan,* 48 Ark. 413; *Quertermous* v. *Hatfield,* 54 Ark. 16; *Block* v. *Smith,* 61 Ark. 266. Green was an ignorant negro, whose learning was limited to ability to sign his name. Morris was a business man. This contract was read over to Green, and signed by him. The first note fell due two days after its date, and Morris admits that he knew Green could not pay it, and agreed to wait till the second became due before requiring payment of the balance of it, the $45 then being the only payment required. Green testified that, under the original verbal contract, and the written contract as he understood it, he was to have four years to pay for the land; and further that he did not know of the rental provision in case of default. Concede that his evidence is not sufficient to overcome the written contract (*Goerke* v. *Rodgers,* 75 Ark. 72), and pass to the subsequent conduct of the parties. In the fall of 1898, Green was owing, under the written contract, on the land $195, and owing a store account to Morris of $169.05. To secure the

latter, Morris had a crop mortgage. From the proceeds of his crop Green paid Morris in October $151.60. He says it was agreed that $100 should be paid on the land debt. Morris denies this, and asserts it was all paid on the store account. Morris says that Green then forfeited his contract, but fails to show any notice of such assertion of this claim to Green, beyond saying that he told his bookkeeper to tell Green. Green says he was not so notified, and the bookkeeper was not called. Green made several payments after this alleged forfeiture. According to Morris' books his total payments were $184.92, which would be $33.32 after the October payment, and which would discharge the store account due of that date, and leave $17.45 to apply on the land. The chancellor found, and there is evidence to sustain it, that Green made further payments which are not ·entered on Morris' books. Morris entered upon his books a charge against Green for rent, but the date of the entry fails to appear on the books. Morris did not return the notes till 1901. In November, 1899, Morris received an offer from a responsible party, acting as Green's attorney, to pay all Green owed, and asking a statement of his account. Green also made an arrangement with a bank in November, 1899, to secure the money to pay Morris, the bank only requiring that Morris furnish a statement of the amount. · Green postively and circumstantially testified to repeated demands for a statement from Morris, and was always refused or postponed, and always assured until October, 1899, that he had four years in which to pay out this land. In October, 1899, Morris claimed that the contract was forfeited, and it was shortly after that that Green made the arrangements to borrow the money to pay the balance, but could not secure a statement of it. From the time he went into possession till the alleged forfeiture Green had put about $350 worth of permanent improvements on the land. In February, 1901, Morris attached Green's crop for rent. The case originated in a justice's court, and went to the circuit court on appeal, and in the circuit court Green filed an answer and cross complaint, averring that he had purchased the land, improved it and paid $240 on the purchase price, and had repeatedly offered to pay the balance, and that he was imposed upon in the written contract, etc., and asked a transfer

to equity, and prayed specific performance of the original contract, upon payment by him of balance due. This case was transferred to the chancery court, and Morris filed an amended complaint, and alleged a misdescription of the land in the contract, and prayed a reformation of it, and that the purchase contract be forfeited, and he have judgment for rent. Green also brought suit in chancery for specific performance, which was consolidated with this transferred case. The chancellor found in favor of Green, ascertained the amount due on the purchase price after all payments were credited, and decreed specific performance by directing Morris to make a deed upon the payment of said amount. This decree is right.

Morris testified that his intention in putting the forfeiture provision into the title bond was to secure the payment of the money, and not to enable him to get the land back. "It is well settled that where the agreement secured is simply one for payment of money, a forfeiture either of land or chattels, etc., incurred by its nonperformance, will be relieved against on payment of debt, interest and costs." Pomeroy, Eq. Jur. (2d Ed.), § 450.

Moreover, the facts estop Morris from claiming a forfeiture of the purchase contract. This court approved this thoroughly sound principle of equity jurisprudence: "If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving him against it, if necessary." *Little Rock Granite Co. v. Shall,* 59 Ark. 405.

In the first place, the default in the payment of the first note (due two days after its execution) was admittedly waived when the note was executed, and the performance of the contract in regard to it was not expected or required. To permit this ignorant negro to continuously and substantially improve the land; to accept his money knowing that he believed (and with good reason) that each payment was reducing the debt on his land; to retain his notes for the purchase price (negotiable and on their face not due) for over a year after the alleged

forfeiture; to fail to notify him that the purchase contract was forfeited, and that all payments, prior and subsequent thereto, were rent payments—estop Morris in a court of conscience from insisting upon the letter of his contract.

These facts, and more, are found in Green's evidence, which comes here accredited by the chancellor, and is strongly corroborated. In truth, the most of the essential facts are admitted by Morris.

The decree is affirmed.