## BANKS *v.* BOWMAN.

Opinion delivered July 22, 1907.

SALE OF LAND—FORFEITURE—WAIVER.—Though a contract for the sale of land stipulated that upon default in payment of the deferred purchase money notes the contract should be terminated, the vendor's assignee was not entitled to enforce a forfeiture where a few days after the maturity of one of the notes he acquiesced in the vendee's proposition to pay him within a few days, though he subsequently refused to permit him to do so.

Appeal from Chicot Chancery Court; *James C. Norman,* Special Chancellor; affirmed.

*E. A. Bolton, William Kirten* and *W. S. McCain,* for appellant.

The contract in this case has already been construed by this court, and under the facts established there can be no doubt of appellant's right to the land. 76 Ark. 578; 78 Ark. 333; *Id.* 574.

*W. G. Streett,* for appellee.

HILL, C. J. H. C. Williamson, of Memphis, Tenn., contracted to sell twenty or thirty tracts of land in Chicot County to negroes on time payments—among others a forty-acre tract to King Banks on the 7th of December, 1899. The consideration was $25 cash and five notes for $61.85 each, due on the first day of each November for the five following years. The contract is identical, so far as the issues here are concerned, with the contracts construed in *Carpenter* v. *Thornburn,* 76 Ark. 578, and *Smith* v. *Caldwell,* 78 Ark. 333.

The land, when purchased by Banks, was wooded land; it had been deadened but not otherwise improved. Banks took possession under his contract, and improved and cleared twenty-five or twenty-six acres, built two houses, a crib, cotton houses and other outhouses; planted an orchard, and brought the land, with its improvements, to a value of fifty or sixty dollars an acre. He paid the notes falling due on November 1, 1900, and 1901. This suit grew out of his failure to pay at maturity the note falling due on November 1, 1902.

There is no serious conflict in the evidence. Where there is a conflict, it is a mere difference between two witnesses detail-

ing the same transaction, and the court accepts in such conflicts the testimony accredited by the chancellor—nothing else appearing to determine the preponderance. So treating the testimony, the following facts appear:

Before the maturity of the notes, Williamson would give the negroes notice, and send the notes for collection to Henry Wilson, a negro living in that vicinity. In making the contract with Banks, Wilson had acted as agent for Williamson, and the first two notes had been paid through him.

In October, 1902, Williamson sent a statement to Wilson of the various amounts due from the negroes, together with the notes which were about due. Banks's note was not among the lot, and he wrote Williamson inquiring about it, and was informed that it had been purchased by H. A. Bowman of Little Rock, and he notified Banks of this fact. He says that Banks then got him to write a letter to Bowman (to which Banks's name was signed), asking him if he had this note. This letter was not returned to the writer, and presumably was received by Bowman, but he does not appear to have answered it. Wilson says that it was the last of October when he wrote the letter for Banks. The exact date he does not know. The testimony of Bowman and Williamson is that the assignment of the note to Bowman was made on the 28th of October. From other established facts in the case, it must have been that Bowman purchased the note some short time before the date of its formal assignment.

Bowman says that he came to his plantation in Chicot County, which adjoined the Banks place, in the first part of November, and that Banks then called to see him and asked if he had his notes and had them with him, and he told him that he had. He asked Banks if he was ready to pay the note then due, and Banks said no, and he told him that he had the note whenever he was ready to pay it.

On the other hand, Banks testified that he asked Bowman if he had the note with him, and then Bowman asked him if he had the money to pay it; and "I told him I would get his money in a few days, and I asked him if he had the notes, so that I could get his money, and he said yes." Banks told Bowman that he would get Lacy Brothers & Kimball, commission merchants of

Memphis, who were supplying him, to pay the note. On November 19, 1902, Lacy Brothers & Kimball wrote to Banks that they found that Bowman had purchased the tract of land, and that Williamson had turned the entire contract over to him, and that, on looking over Williamson's books, they found that Banks owed a note of $61.85, together with $7.50 for some taxes. That Williamson had said that he would be perfectly safe in making payment to Bowman, and that he (Bowman) would issue the deed the same as if Mr. Williamson still owned the land, and added: "If you wish us to write Mr. Bowman and take up the note, advise us promptly, and we will look after it for you."

Whether this was written before or after the above conversation between Banks and Bowman is not shown. Bowman at one place fixes his trip to Chicot County in the first part of November, and at another place in the middle of November. The letter on its face seems to be responsive to some earlier request of Banks for Lacy Brothers & Kimball to look into the matter for him and ascertain where and to whom he should pay the note.

On November 29th Lacy Brothers & Kimball wrote Banks that Mr. Bowman would not allow them to pay his note, saying that it was due on November 1st. The evidence is not as positive as it might be whether Lacy Brothers & Kimball actually offered to make this payment to Bowman, and it was refused by him; but it is fairly deducible from the testimony of Mr. Lacy and Mr. Bowman that the letter stated the actual situation. Certainly Banks was led to believe that it did. On receipt of this letter, Banks consulted an attorney, who advised him to deposit the money in bank to take up this note, which he did; and sometime thereafter Mr. Bowman called on the attorney and was informed by him that the money was in bank ready to pay the note; but Mr. Bowman said that the contract had been forfeited, and he wanted the land and would not accept the money.

This suit was brought to enforce specific performance of the contract; and the only question involved is the effect of the nonpayment of the note on November 1st. The chancellor found

that the failure to pay was occasioned by the fault of Bowman, and Bowman has appealed.

The regular and proper way for Banks to have preserved his rights would have been to have paid the note at the office of Williamson, at Memphis, Tenn., at the date of its maturity. The question here is whether in a court of conscience Bowman is entitled to claim forfeiture under the facts in evidence.

Williamson had for several years sent the notes to Banks, together with twenty or thirty of his neighbors similarly situated, to a local collector, instead of standing upon his right to have the notes paid at his office in Memphis. In addition, he had sent notice to Banks of the maturity of his notes. This conduct would prevent Williamson from claiming forfeiture for non-payment at Memphis on the date of maturity until he had afforded his debtor an opportunity to pay. He could not establish a course of conduct and then take advantage of that conduct to enforce a forfeiture superinduced by his waiver of his strict legal rights. Bowman, who lived in Little Rock, acquired this note two days before its maturity. He gave no notice of its purchase to Banks, and Banks had every reason to believe that he could continue to pay the local collector of Williamson until he was informed by Wilson that Bowman had acquired the note. Then he took steps to ascertain if Bowman had the note and where he could pay it.

The first information he received from Bowman that he had his note was in November, on Bowman's trip to Chicot County. Bowman then acquiesced in Banks's proposition to pay him in a few days; but within the few days he refused the payment on the ground that the contract was forfeited on the first day of November. When Banks approached him early in November as to whether he had the note, and told him that he would have the money for him in a few days, Bowman then had, under his contract, the right to the money either as purchase money or as rent. Banks's conduct in writing to him before the maturity of the note, and following his inquiry up as soon as Bowman reached Chicot County by calling on him in person, shows that he was intending to make the payment as purchase money, and not as rent, upon this property which he had greatly enhanced in value.

Bowman remained silent then as to forfeiture of his right to purchase, and he had not, up to that time, given Banks any opportunity to pay him, other than the legal right which Banks had to pay at the office of Williamson in Memphis, Tenn., which, as shown, had been waived by Williamson.

It is contrary to the equity of the case to permit Mr. Bowman to claim a forfeiture under the facts.

Judgment affirmed.