## SOUTER *v.* WITT.

### Opinion delivered November 2, 1908.

1. SALES OF LAND—FORFEITURE—RELIEF IN EQUITY.—When the parties to a contract of sale of lands have so stipulated as to make the time of payment of the essence of the contract, a court of equity cannot relieve a vendee who has made default. (Page 599.)

2. FORFEITURES—WHEN ENFORCED IN EQUITY.—Whether equity will in a particular case enforce a forfeiture in case of a default by the vendee in sale of land, by the terms of which time was made of the essence

of the contract, depends upon the circumstances of the case and the conduct of the party who seeks to enforce the forfeiture. (Page 600.)

3. APPEAL—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—In case of a conflict between the two litigants in testifying as to the transaction in question, this court will accept the testimony accredited by the chancellor, where nothing else appears to determine the preponderance. (Page 600.)

4. SALES OF LAND—FORFEITURE—WAIVER.—Where a contract for the sale of land provided that, on default in payment of the purchase money, the vendee should forfeit his rights as such and become liable as tenant for rent, the vendor's failure to demand rent after default in payment of the purchase money and his retention of the purchase money notes did not constitute a waiver of the forfeiture. (Page 601.)

Appeal from Columbia Chancery Court; *Emon O. Mahoney*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellant bought of appellee a tract of land in Columbia County, Arkansas. The parties entered upon a written contract, which, so far as may be necessary to set forth, specified: "That, in consideration of the stipulations hereinafter contained and the payments to be made as herein specified, the first party agrees to sell unto the second party the following real estate: (here follows a description of the land and the contract continues as follows) : And the said second party, in consideration of the premises, hereby agrees to pay to the order of the said first party the following sums at the several times named below:

| When due. | Dollars. | Cents. |
|---|---|---|
| Dec. 1st, 1905, | 125.00 | |
| Dec. 1st, 1906, | 150.00 | |

With 10 per cent. interest per annum on all notes from date until paid. For which amounts the party of the second part has executed and delivered to the said first party two promissor notes, dated on the 22d day of August, 1904.

"And the party of the second part hereby covenants and agrees that no timber shall be cut on this land without a speal agreement, indorsed hereon and signed by the parties heto, except for the necessary fuel for the family, erection of ild-ings and fences on said premises and clearing of the lar for actual and immediate cultivation, and that all improvents

placed upon said premises shall remain thereon and shall not be removed or destroyed until final payment for said land; and further that he will regularly and seasonably pay all such taxes and asessments as shall be lawfully imposed upon said premises.

"In case the said party, his legal representatives or his assigns, shall pay the several sums of money aforesaid punctually and at the several times above limited, and shall strictly and literally perform all and singular the stipulations and agreements aforesaid, after their true tenor and intent, then and thereupon the first party will make up to the said second party, his heirs or assigns, upon the surrender of this contract, a warranty deed, conveying the title to said afore-described lands and premises in fee simple. But in case the said second party shall fail to make the payments aforesaid, or any of them, punctually and upon the strict terms and at the times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid strictly and literally, without any failure or default, time being of the essence of this contract, then this contract shall, from the date of such failure, be null and void, and all rights and interests hereby created or then existing in favor of the said second party, his heirs or assigns, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted shall revert to and revest in the said first party, his heirs or assigns, without any declaration of forfeiture or act of re-entry, or without any other act by said first party to be performed, and without any right in said second party of reclamation or compensation for moneys paid or improvements made, as absolutely, fully and perfectly as if this contract had never been made.

"And it is further covenanted and agreed by and between the parties hereto that, immediately upon the failure to pay any of the notes above described, all previous payments shall be forfeited to the party of the first part, and the relation of landlord to tenant shall arise between the parties hereto for one year from January 1st immediately preceding the date of default, and the said party of the second part shall pay rent at the rate of forty dollars for occupying the premises from the said January 1st to

the time of default, such rent to be due and collectable immediately upon such default."

The contract was executed August 22, 1904, and on the same day appellant executed and delivered to appellee the notes according to the stipulations of the contract. Appellant went into possession of the land in December, 1904. He made improvements on the place, and paid the taxes, amounting in the aggregate to $212.31. Appellant testified as follows: "I have never paid the notes given for the purchase price of said land. Just before the first of said notes was due, I went to Mr. Witt and told him that I did not know that I would be able to pay all of the first note when due; that I was making improvements on the place, and needed all the money I could get to put on the place, and that the place was good for his money. He gave an affirmative grunt, but gave no intimation that he would want his money when it was due, or that he had any objection to giving me time on it. I had been doing business with Mr. Witt before this time, and had owed him money, and he never had insisted on my paying it when due, but was always willing to extend time, and I understood from what he said and the way he acted that he was willing for me to have additional time on the land notes. About the first of January, 1907, I went to Mr. Witt to make a payment on my land notes, and asked him if he wanted it all or was willing to take just a part of it; that I could pay it all if he wanted it, but would rather pay a part of it. He then claimed that I was too late, and that he would not then let me have the land at the price we had agreed upon. Up to that time I understood that Mr. Witt was perfectly willing to extend time on the notes. If I had not understood it that way, I would have met them when they were due. Mr. Witt has never asked me to pay anything on these notes. He has never said anything to me about paying rent. He has never returned to me my notes or indicated to me in any way that my delay was unsatisfactory to him. About the first of last February, I went to Mr. Witt's house, and offered to pay him the full amount of the purchase price with interest up to that time, and asked him for a deed to the land. He refused to give the deed or to receive the amount that I offered to pay. When I first went to Mr. Witt in January, 1907, and asked him if he would

take a part or did he want all of the money, he asked me if I had all of the money with me. I told him that I did not have all the money with me; but that I could get it. He then refused to let me have the land at the price agreed upon. He afterwards told me that if I had had the money with me he would have let me have the land. Mr. Witt passed this place frequently, and knew that I was going ahead making improvements on it after the time the notes were due." The statement in the last clause was practically nullified on cross examination.

The appellant further testified that when he first signed the contract there was a blank in that part of the printed form in regard to the description of the land and the amount to be paid for rent; that since the contract was signed the description and the word "forty" has been inserted; that there was no agreement that appellant should pay rent in case of a failure to pay notes when due.

J. M. Witt testified that "the contract and notes are as executed by me and Mr. Souter with the exception that I afterwards wrote the numbers in there by agreement with Mr. Souter. I never did give Mr. Souter to understand that I waived any of the conditions of the contract. He spoke to me about being able to pay a part only, as I remember, of the first note about the time it became due, or possibly afterwards. It seems to me that it was sometime just before Christmas of the year the first note became due. I do not remember what answer I gave him, but probably the one he says I made is correct. He never did after that conversation offer to pay any part of the first note until in this year. He never did speak to me again about the payment of either notes until January of this year. Mr. Souter had been in debt to me at different times before we made this contract, and was frequently slow in making payments. I never pressed him for payments. I have never asked Mr. Souter for the payment of the notes given for the land involved in this suit. I have never returned the notes to him. I always told Mr. Souter, at the time of making the contract and after that, that if he would pay the notes by the time the last note was due it would be all right. At the time we made the contract I told Mr. Souter that he could have his own time to pay for the land, and he named the terms stipulated in the contract. At the time we made the contract, Mr.

Souter remarked that he expected it would be hard on him to make all of the first payment, and I told him I guess it would be all right if he didn't pay the first full payment. This was when we were talking about the land and before the written contract was signed. I expect maybe that I would have taken the money and made Mr. Souter a deed if he had come up with the money in full any time before January 1, 1907, the time I marked the contract cancelled. The contract we made was a *bona fide* sale. The forfeiture clause was put in the contract to show that he was to pay me so much money before he could get the land according to the stipulations of the contract. I never asked Mr. Souter to pay any rent on the place. The day we signed the contract Mr. Henderson wrote it, and when he came to the rent part of it he asked what amount of rent, and I told him that it made no difference, as I didn't intend to charge him any rent no way. He then asked what the rent would be worth, and I said that if I was going to rent it I would want forty or fifty dollars, and he must have then put in the forty dollars. I never did ask Mr. Souter to surrender this place to me, never demanded any rent on it, never demanded any payment of the notes, and have never surrendered the notes to him. I took the two copies of the contract the day we made it to fill out the numbers of the land and never gave him back a copy of it. Mr. Souter has never asked for the notes, and I think I told him in January, 1907, when he spoke to me about the matter, that he could get the contract and notes at any time. Whatever I might have done since December 1 last, I would have done it outside of the contract and not under it. There was never anything said between me and Mr. Souter about paying rent."

It was shown by the witness who filled out the printed form of contract and notes that he inserted the word "forty" in the contract.

The suit was by appellant against appellee for specific performance. The court upon the above facts refused the relief prayed in appellant's complaint and dismissed it for want of equity. Appellant seeks by this appeal to reverse that decree.

*McKay & Lile*, for appellant.

Eliminating the clause relating to rents, there remains a simple contract to convey land upon the payment of the purchase

money. When the owner of land sells it, taking notes of the vendee for the purchase money and executing to him a bond for title, the effect of the contract is to create a mortgage in favor of the vendor upon the land to secure the purchase money. 83 Ark. 41, 42; 75 Ark. 52; 66 Ark. 167. Since a bond for title given under such conditions creates a mortgage in favor of the vendor, does not the contract in this case have the same effect? If so, the stipulation that "in case the second party shall fail to make the payments aforesaid, or any of them, punctually and upon the strict terms and at the times above limited," etc., creates a forfeiture whereby appellant is prevented from redeeming. In equity the mortgagor, both before and after a breach of the condition, is regarded as the real owner of the land subject to the lien of the mortgage. The mortgagor cannot in the inception of the instrument deprive himself of his equity of redemption. 3 Pomeroy's Eq. Jur., 2d Ed., § § 1181, 1188, 1192, 1193; 1 Id. § 382; 83 Ark. 41, 42; 75 Ark. 52; 29 Ark. 554; 25 Ark. 142-3.

2. If the contract is not in effect a mortgage, and if the clause relative to rent is to be considered as a part of the contract, then equity will relieve against the forfeiture. 75 Ark. 412. The payment of the notes is a condition subsequent, and equity will relieve from a forfeiture caused by the breach of a contract upon payment of the amount due with interest. 42 Ark. 347; 16 Cyc. 78.

3. Appellee is estopped to claim a forfeiture, he having waived or acquiesced in the breach. 59 Ark. 505; 75 Ark. 414; 16 Cyc. 78, 79, note 71.

*Stevens & Stevens,* for appellee.

This was a valid contract. Herein time is made the essence of the contract. Having failed to comply with the stipulations of the contract, his suit must fail. 48 Ark. 413; 134 U. S. 68, L. Ed. 818; 3 Pomeroy's Eq. Jur. 2 Ed., § 1408; 76 Ark. 578.

WOOD, J., (after stating the facts.) The written contract is plain. There is a clause expressly making "time of the essence of the contract," and other clauses which clearly show that the parties intended at the time of the execution of the contract that the payments should be made at the times stipulated. From

the language of various provisions of the contract the conclusion is irresistible that payment at the time specified was made a condition precedent to the right of appellant to acquire the title, and to obtain a deed to the land. This being true, the case, so far as the written contract is concerned, comes well within the rule announced by Mr. Pomeroy and quoted by Judge RIDDICK in *Carpenter* v. *Thornburn,* 76 Ark. 578, as follows: "It is well settled that when the parties have so stipulated as to make the time of payment of the essence of the contract, within the view of equity as well as of the law, a court of equity can not relieve a vendee who has made default. With respect to this rule there is no doubt the only difficulty in determining when time has thus been made essential. It is also equally certain that, when the contract is made to depend on a condition precedent—in other words, when no right shall vest until certain acts have been done, as, for example, until the vendee has paid certain sums at certain specified times—then also a court of equity will not relieve the vendee against the forfeiture incurred by a breach of such condition precedent." 1 Pom. Eq., § 455; see also *Ish* v. *Morgan,* 48 Ark. 413; *Cheney* v. *Libby,* 134 U. S. 68; 4 Pomeroy, § 1408. But it does not follow that, because there has been a forfeiture under the strict letter of the contract, the vendor is entitled to insist upon it. That depends upon his conduct with reference to it. The Supreme Court of the United States in *Cheney* v. *Libby, supra,* after announcing the doctrine we have mentioned as to the proper construction of a contract where time is essential, says: "The discretion which a court of equity has to grant or refuse a specific performance, and which is always exercised with reference to the circumstances of the particular case before it, may, and of necessity must be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions." Some of our own cases to the same effect are *Little Rock Granite Co.* v. *Shall,* 59 Ark. 405; *Morris* v. *Green,* 75 Ark. 410; *Bowman* v. *Banks,* 83 Ark. 524.

The real difficulty in this case has been to determine, on the issue of fact, as to whether appellee's conduct was a waiver of the forfeiture. Appellant and appellee are the witnesses *pro* and *con* respectively on this issue, and as is said by Chief Justice HILL

in *Bowman* v. *Banks, supra:* "Where there is a conflict, it is a mere difference between two witnesses detailing the same transaction, and the court accepts in such conflict the testimony accredited by the chancellor, nothing else appearing to determine the preponderance." There was a clear waiver of any forfeiture on account of a failure to pay the first note when it became due. The testimony of appellee himself shows that. For among other things he says: "I always told Souter at the time of making the contract, and after that, that if he would pay the notes by the time the last note was due it would be all right." The appellant, before the first note was due, went to the appellee and told him that he (appellant) was making improvements, and that he would not be able to make all of the first payment when due, and that thereupon appellee gave "an affirmative grunt." He says that he had been doing business with appellee before this time, and had owed him money, but that appellee had never insisted on payment when the money was due, and was always willing to extend the time. Therefore appellant concluded that appellee was willing for him to have additional time on the second note as well as the first. But appellant did not ask appellee about payment on the second note until after same was due. Then he found that appellee was unwilling to extend the time claiming that appellant was too late, etc. Appellant testified that he understood from what appellee said and did that he was willing to extend the time of payment after the last note became due. But appellant fails to point out any conduct on the part of appellee before or after the time for the payment of the last note that would warrant appellant in believing that appellee would extend the time for payment beyond the date when the last note was due.

Appellee testified that his indulgence to appellant was with reference to the first payment. True, he says that "may be he would have taken the money and given appellant a deed had he come up with the money in full before January 1, 1907," the day the contract was marked cancelled. But appellee says it was a *bona fide* sale, and "the forfeiture clause was put in the contract to show that he was to pay me so much money before he could get the land according to the stipulations of the contract." The fact that appellee never asked appellant to pay any

rent on the place, and that appellee retained the notes after the expiration of the time of payment, can not be taken as a waiver of the forfeiture. Appellee says that he told appellant in January, 1907, when he spoke about the matter, that he, appellant, could get the contract and notes at any time. He says that he did not intend to charge him rent, and there was nothing said about it; that what he did since December 1, 1906, the time for the final payment, he would have done outside of the contract and not under it."

The fact that appellee did not charge appellant rent may be regarded as an act of kindness to appellant rather than an acknowledgment on the part of appellee that he did not own the land. The testimony is set out in full, and it fully sustains the finding of the chancellor. His decree is therefore affirmed.