VERNON *v.* MCENTIRE.

5-2211                                              339 S. W. 2d 855

Opinion delivered November 14, 1960.

[Rehearing denied December 12, 1960.]

*Wiley A. Branton,* for appellant.

*Jay W. Dickey,* for appellee.

JIM JOHNSON, Associate Justice. This suit arises out of a contract for the sale of land. The appellants, Luchers Vernon and Annie Vernon, a Negro couple, on December 19, 1948, entered into a contract to purchase 80 acres of farm land in Jefferson County from Mr. Ed Bost. The agreed purchase price was $6,000. Appellants paid $1,500 as a down payment and agreed to pay the balance off at $400 per year with interest at six per cent. Appellants went into possession of the lands on February 4, 1949, and have remained in possession ever since and have raised a crop each year. The appellants were threatened with a foreclosure by Ed Bost in 1950 and they employed appellee, Hendrix Rowell, as their lawyer to represent them in preventing a forfeiture of their purchase contract.

In February 1955 appellee Rowell, with the approval of appellants, paid off the balance due Ed Bost from the appellants in the amount of $2,500 and took over the contract himself. In addition to the purchase money paid Ed Bost by appellee Rowell, appellants owed Rowell money previously advanced them for crop furnish, etc. This money added to the amount paid Bost totalled $3,570.71. After the purchase by appellee Rowell of the property here in question, the following letter was written by him to appellants on February 25, 1955:

"Dear Luchers and Annie:

"This is to advise that with your consent I took over Ed Bost's account this date and that you owe me a total of Thirty-five Hundred and Seventy and 71/100 ($3,570.71) Dollars with interest at 6% per annum from this date until paid.

"When you have paid this obligation plus all taxes and the taxes that I have to pay will carry interest at the same rate as the note. I will deed the . . . (described property) . . . in Jefferson County, Arkansas, to you and your wife, but I want it distinctly understood that the relationship between us is simply that of landlord and tenant and if you do not pay me or if you pay me one year and do not pay the next and I am forced to dispossess you, that whatever you pay will only be considered as rent.

"While the note you are giving me is a demand note and I can call it at any time, I will be reasonable with you and work with you, but I want you to thoroughly understand that you are occupying the premises at my sufferance.

"If this meets with your approval, I want you and your wife to so indicate by signing hereon below.

Yours very truly,<br>/s/Hendrix Rowell

HR:JN

"Approved: /s/ Luchers Vernon
    /s/ Annie Vernon"

The above letter from appellee Rowell to appellants, which was approved by appellants, is the only written sales

contract appearing in the record. There is nothing contained in this contract regarding time as being of essence. Appellee Rowell, true to his word, was reasonable with appellants and did work with them in every lenient way. In fact, he was so reasonable with them that as late as December 31, 1957, appellants had only reduced the indebtedness down to $3,100. On that date appellee Rowell wrote appellants the following letter:

"Dear Luchers:

"As requested, I hand you herewith statement of your account, showing interest figured at 6% up to January 1, 1958, at which time you will owe me a total of $3,100 with interest at 6% from January 1, 1958, until paid.

"This is to further notify you that if this debt has not been paid on or before December 31, 1959, I will have to have possession of the property.

Very truly yours,
/s/ Hendrix Rowell"

Six days later appellee Rowell wrote appellants the following letter:

"Dear Luchers:

"A friend of mine and I want to talk with you about your debt and what can be done in order to get you out of debt to the Government and to me.

"Accordingly, I would like to see you in my office at 11:30 A. M. Wednesday, January 8, 1958.

"Before you come to my office, go by the FHA and get the exact amount of money you owe them, so we will know what we are talking about.

Very truly yours,
/s/ Hendrix Rowell"

Appellant went by appellee Rowell's office as requested. Appellee Rowell testified relative to the discussion which occurred at the meeting as follows:

". . . in looking through my file I saw that letter telling him (appellant) he had two years to pay my debt, and I immediately wrote him to come in. Luchers came in . . . and I told him I wrote the letter (December 31, 1957) in error, and although 'I want my money, you cannot be disturbed in possession until 1959, regardless of what I do, you will have two years' free rent, two years to pay the Government, and two years to get another home.' He said 'I have been trying.' I told him 'I'm not as big as the Simmons National Bank or as big as the Government and I just can't carry you any longer.' I said 'If I can get you $6,-500.00 you won't get but $900.00. I have even answered blind ads but nobody wants your land. You have $35 or $40 acre stuff, and you have no improvements on the place, and it is cut up by two canals, and having a crop about once every five years.' I told him that Mr. McEntire or Judge Robinson could take him over two years free of rent, and 'I hope during that time you will pay the Government off and get enough to move.' I told him the non-disturbance agreement was outstanding, and 'if I can get somebody to pay me what I have in it, I am going to sell it.' He owes me $3,100.00, Uncle Sam $2,100.00, the Cousart taxes and State and County taxes. I was trying to explain if I could get $6,500.00, he would possibly have $900.00 and I said 'I am not out for you to beat the Government, they don't have a lien on the land, it is my land,' but I told him I would have to 'unload him'—I used that expression 'and if you can't pay Uncle Sam, you can walk off.' I said 'I would rather you have it than give it to India in Foreign Aid'."

"Q. When he left your office before you sold to Mr. McEntire, did you state to him you were going to sell the land?

"A. I said, 'You are riding me.' I told him without any question . . . I gave him an hour telling him what sufferance meant. I told him 'I am not going to have any foreclosure, I have the deed, and you are not going to get it unless you pay me; I have got to have my money'."

Following this meeting in Rowell's office, appellee Rowell conveyed the 80 acres to appellee McEntire on Jan-

uary 24, 1958, for the consideration of $3,350. On the same date, appellee Rowell wrote the appellants and informed them of his conveyance to Mr. McEntire and stated that "the result of which is that you have forfeited all of your right of redemption, unless you can prevail upon Mr. McEntire to permit you to do so . . ." Appellants contacted the appellees about redeeming the lands to no avail and, through another lawyer, appellants tendered the balance due on the purchase price, plus interest, to the McEntires and the latter refused to accept the money or execute a deed to appellants.

The appellants filed suit on January 30, 1959, for specific performance, or damages in the alternative, against J. L. McEntire and wife and also Hendrix Rowell. The cause was heard on November 10, 1959, and the appellants' complaint was dismissed with prejudice. This appeal followed:

For reversal, appellants contend that "The right of Forfeiture had been waived and specific performance should have been ordered."

As has been stated above, the contract here in question contained nothing regarding time as being of essence. The rule relative to the inclusion of such express language in a contract is set out in *White* v. *Page*, 216 Ark. 632, 226 S. W. 2d 973, as follows: "The contract in the case at bar did not state in express words 'time is of the essence'; but our cases hold that evidence may establish such fact in the absence of a specific statement in the contract." Even so, we think there are facts and circumstances in the present case which clearly show that time was not of the essence. One of the facts to which we refer is that on December 31, 1957, appellee Rowell wrote Luchers Vernon that he had until December 31, 1959, to pay the outstanding indebtedness. This letter was followed by a conference between Vernon and Rowell and according to Rowell's own version of what occurred in that conference, he did not by inference or otherwise indicate that he meant to declare a forfeiture immediately. According to our view, the rule applicable to the facts in the case at bar was stated by Mr. Justice Frau-

enthal, speaking for the Court in *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989, as follows:

''Parties may enter into a valid contract relative to the sale of land whereby they may provide that time of payment shall be of the essence of the contract, so that the failure to promptly pay will work a forfeiture. *Ish* v. *Morgan,* 48 Ark. 413; *Quertermous* v. *Hatfield,* 54 Ark. 16; *Block* v. *Smith,* 61 Ark. 266. But the final effect of such an agreement will depend on the actual intention of the parties, as evidenced by their acts and conduct; and such a breach of the contract as would work a forfeiture may be waived or acquiesced in. The law will strictly enforce the agreement of the parties as they have made it; but, in order to find out the scope and true effect of such agreement, it will not only look into the written contract which is evidence of their agreement, but it will also look into their acts and conduct in the carrying out of the agreement, in order to fully determine their true intent. It is a well settled principle that equity abhors a forfeiture, and that it will relieve against a forfeiture when the same has either expressly or by conduct been waived. The following equitable principle formulated by Mr. Pomeroy has been repeatedly approved by this court: 'If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary.' 1 Pomeroy Eq. Jur. 452; *Little Rock Granite Co.* v. *Shall,* 59 Ark. 405; *Morris* v. *Green,* 75 Ark. 410; *Banks* v. *Bowman,* 83 Ark. 524; *Braddock* v. *England,* 87 Ark. 393.''

Applying these principles to the case at bar, we find nothing in the record which would cause us to doubt in the least the veracity of appellee Rowell. In fact, appellant candidly concedes that there was no wrong doing. As stated by appellant: ''Appellants wish to make it clear that there is no allegation being made of any 'fraud or intentional imposition' in the transaction.'' However, to the contrary we find the record relative to the indebtedness owed by appellant to be replete with acts and unmistakable

indications of leniency and benevolence. Even so, based on our prior decisions, we have no choice but to find that herein lies appellee's as well as the trial court's error. As is true in many cases of waiver, appellee Rowell's own goodness to appellants was his own undoing under the law since such acts and indications constituted waiver.

Having thus concluded, it necessarily follows that the decree is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HARRIS, C. J., and McFADDIN, J., dissent.

ED F. McFADDIN, Associate Justice, dissenting.

The majority is reversing the finding of the Chancery Court on a fact question; and it is my view that the Chancellor, seeing the witnesses, had a better opportunity to evaluate the evidence than does this Court. So I would affirm the Chancellor.

I view the letter of February 25, 1955, that Honorable Hendrix Rowell wrote the appellants, and which they approved, as being a mere executory contract affecting real estate; and I believe he had a perfect right to declare a forfeiture, as he did. The letter and all the surrounding circumstances show that time was of the essence. The Chancery Court so found; and I cannot say that the preponderance of the evidence is against the Chancery finding. Therefore, I would affirm the Chancery decree.

The Chief Justice joins in this dissent.