4-5997                                    141 S. W. 2d 50

Opinion delivered June 10, 1940.

*Brewer & Cracraft,* for appellant.

*Hal B. Mixon,* for appellees.

BAKER, J.   The appeal in this case involves the construction or interpretation of a will of the late Dr. J. W. Bean.   The appellant states the questions presented as follows:

"(1)   Did Mrs. Bean receive a life estate or fee under the will of her husband, Dr. J. W. Bean?

"(2)   If Mrs. Bean only received a life estate, is her estate entitled to a lien on the property or a right under the betterment statute to the extent that it was improved with her money?"

We copy the will in full except we omit the land descriptions.

"Last will and testament of Dr. J. W. Bean, Marvell, Arkansas. Date of Will, September 13, 1929.

"Know all Men by These Presents:

"That, I, Dr. J. W. Bean, bequest to my wife, Mamie Nicholian Bean, the following:

"All the stock I have in Robinson-Swift Company, of Marvell, Arkansas. And all of the building and loan that I have in my name in any of the building and loan companies in Helena, Arkansas, and . . . (land descriptions) and all D. T. real or personal or contract that I have on real estate, to have and to hold, and have all the proceeds therefrom and use as she best wishes and any other real estate I come in possession after this date.

"Furthermore, after the compliance of any contract I have made, she can give a deed to said land.

"After her death (Mamie Nicholian Bean) then this property will go to my heirs.

"/s/ J. W. Bean."

The facts in this case are not wholly undisputed. After Dr. Bean's death, his widow, Mrs. Bean, took into her home the appellant, Kennedy Graves, a boy about fifteen years old, the son of her sister. He grew up in that home and was treated by Mrs. Bean, who never had any children, much as a mother treats her own child. Mrs. Bean executed a will by which she devised to this young man all her property.

As stated above, it now has become necessary to construe Dr. Bean's will to determine whether Mrs. Bean took this property and held title in fee, or, if she held only a life estate, did she improve with her own money a certain portion thereof, so that under the betterment act (§ 4658, Pope's Digest) her estate is entitled to recover the value of the betterments.

Appellant contends that in Dr. Bean's will there is an irreconcilable repugnancy in that the last paragraph or sentence of the will, if given effect, destroys the devise to Mrs. Bean and that this last paragraph or sentence should be discarded and Mrs. Bean be declared to have taken title in fee to all the property involved.

There is no substantial dispute or controversy about the law, but only as to its application. In our discussion we shall not attempt to set forth an extensive array of authorities, but, at least, a sufficient number to show the rule of law that prevails. There is a common expression to the following effect, if not in the exact words: In construing a will, the intention of the testator will prevail when not contrary to law or public policy. *Gregory* v. *Welch,* 90 Ark. 152, 118 S. W. 404; *Booe* v. *Vinson,* 104 Ark. 439, 149 S. W. 524; *Union Trust Co.* v. *Madigan,* 183 Ark. 158, 34 S. W. 2d 349. Some of the older cases are: *Camel* v. *Camel,* 13 Ark. 513; *Slaughter* v. *Slaughter,* 23 Ark. 356, 79 Am. Dec. 111.

The ascertainment of the intention of the testator from the will is, of course, for the purpose of giving it effect. In point is the case of *Parker* v. *Wilson,* 98 Ark. 553, 136 S. W. 981, wherein it was said: the intention of the testator governs in the construction of his will and where a testator's design can reasonably be ascertained, it controls.

In the same line of thought as this declaration is the case of *Archer* v. *Palmer,* 112 Ark. 527, 167 S. W. 99, Ann. Cas. 1916B 573, to the effect that wills shall be so construed as to carry into effect the intention of the testator and they are to be so construed as to give force and meaning to every clause of the will. To a similar effect is the case of *Badgett* v. *Bargett,* 115 Ark. 9, 170 S. W. 484.

Numerous authorities might be cited supporting the foregoing announcements and we dare say there is no authority in this state contrary to the principles just set forth. It remains only to make application of these principles now constituting rules of property in this state, as well as generally recognized canons of construction.

One other principle resorted to in the ascertainment of the intention of the testator is that the same must be determined by a consideration of the language of the will when considered in the light of the circumstances under which it was made. *Carr* v. *Crain,* 7 Ark.

241; *Booe* v. *Vinson, supra; Blum* v. *Strauss,* 73 Ark. 56, 84 S. W. 511.

If now we give consideration to this instrument, Dr. Bean's will, as he himself prepared and executed it, we think we are able to reach certain definite conclusions which give full effect to all the language of the testator without discarding or giving to any part of it any strained or unusual meaning.

Dr. Bean appears to have been a practicing physician who devoted himself to some extent to business investments evidenced by his purchase of real property in the community where he lived and the improving of it for rental purposes. He was unschooled or untrained in legal terminology and might have made himself more easily understood had he not attempted the use of phraseology with which he had little or no acquaintance. A letter written by him disposing of his property and executed as was the will might possibly have served his purpose better.

This becomes evident, when we consider the will as a whole, except the last sentence or paragraph. Concerning this the appellant has argued most strongly that Dr. Bean's intention was to give to his wife all the property that he possessed. He had no children and she apparently was the only object of his care. One of the evidences of this fact is a part of the language considered, ''to have and to hold and have all the proceeds therefrom and use as she best wishes and any other real estate that might come into possession after this date.'' It is suggested that it was most probably the doctor's belief that by use of the words ''to have and to hold,'' he was fixing title in the devisee. Indeed, if this were all of the will, no doubt could arise, but that such was his meaning.

But the foregoing rules, derived from authorities, some of which are set forth, impel us to consider the instrument as a whole.

It is reasonable to conclude, we think, that Dr. Bean knew the difference between a life estate and a fee. If so, and if he intended to grant a fee, why should he

have authorized her to convey in specific performance lands under contract of sale?

When the expression, "And after her death (Mamie Nicholian Bean), then this property will go to my heirs," is considered in connection with the foregoing devise and if it be given any effect it should be given such meaning as will not destroy what has gone before, but the intention of the testator should be gathered from the language he has used.

The will and all the parts thereof become consistent when we consider the first three words of the testator's last paragraph or sentence, that is to say he makes his meaning clear by saying, "After her death." The devise to his wife, therefore, was for her lifetime and we think his intention is as clear from this last expression as if he had said in the beginning, that he was giving the property to his wife for life. This interpretation can be had without discarding any of the language of the instrument. Mrs. Bean was to take a life estate and at the determination of that life estate it was intended his heirs should have and take the remainder. When given this construction it is consistent and there is no reasonable challenge of repugnancy. Indeed, it may be said upon the second proposition, according to some of the evidence, Mrs. Bean so understood this will and indicated that fact as she discussed it with friends and associates whose testimony appears in this case.

The settlement of this first proposition, however, does not necessarily dispose of the second. In regard to this second controversy, certain pertinent facts should be stated. Mrs. Bean had charge of all this property for several years. Finally a business building was destroyed by fire. The question was raised at that time by the insurance agent or adjuster as to Mrs. Bean's title to the property and her right to collect the insurance on the burned building. After some discussion and investigation $4,000 was paid by the insurance company to Mrs. Bean. About this time, Mrs. Bean's counsel advised her in regard to her title, particularly as to the proceeds of the insurance after the fire and it was finally

decided that in order to determine the exact nature of Mrs. Bean's title, some piece of the property would be selected and be sold to a vendee who would decline to accept the title till its marketability was established by proper suit.

The appellant's testimony is to the effect that Mrs. Bean had the utmost confidence in her counsel, relied upon him implicitly and that there was no doubt that she believed without reservation she had a good title to all of this real property, and we think this opinion may have been strengthened by reason of the fact that the insurance company paid off after the fire without suit.

It seems also to be without dispute that except for the untimely death of Mrs. Bean, a suit would have soon been instituted in accordance with the plan. It must also, we think, be considered that Mrs. Bean had talked to her brother-in-law shortly after her husband's death, admitting that she understood at that time she had only a life estate and on other occasions when she had had reason to talk with neighbors concerning the property she had made similar admissions as to her interests in the property. This question of fact then as to her title to the property, her good faith in improving, it became one for determination by the trial court, sitting as a jury, and his conclusion and decision, supported as it doubtless is by substantial evidence, is decisive of the controversy.

We have already seen that Mrs. Bean had only a life estate in the property. The trial court has determined the other fact, that is, that she knew the defect in her title. In other words, she understood that her title was not unquestioned, otherwise she would not at the time have been preparing to test it. It can serve no beneficial purpose or interest to enter upon any extended discussions of these matters as her estate must fail in the event she did not make the improvements under color of title or in event that she did not make them in that good faith within the meaning of that expression as defined.

Cases as to the good faith required are illustrated by such authorities as *Patton* v. *Taylor,* 144 Ark. 254,

224 S. W. 49; *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88; *Foltz* v. *Alford,* 102 Ark. 191, 143 S. W. 905, Ann. Cas. 1914A 236.

One chargeable with notice as to the kind of title he holds certainly may not, under the foregoing authorities, make such improvements as will impair the title in fee.

It is highly probable that at the time Mrs. Bean was making this improvement she was expecting returns in rents over a series of years, perhaps for such a length of time that she considered the investment a paying one even though it were finally determined that she held only a life estate. But it is unnecessary to indulge this speculation. She held only a life estate, and according to the trial court's findings, supported by substantial evidence, she was aware of that fact.

The judgment is affirmed.