VERNON *v.* McENTIRE.

5-2637                                              356 S. W. 2d 13

Opinion delivered April 9, 1962.

996

*Wiley A. Branton,* for appellant.

*Jay W. Dickey,* for appellee.

PAUL WARD, Associate Justice. This is the second appeal involving the same parties and the same 80 acres of land in Jefferson County. In the first opinion (*Vernon v. McEntire,* 232 Ark. 74, 339 S. W. 2d 855) it was held that Luchers Vernon and his wife had the right to redeem the land from the McEntires. The background facts are set forth in that opinion.

When the mandate on the first opinion was filed in the trial court no further pleadings were filed by either party. At the beginning of the second hearing the trial court correctly stated the issues in the following language:

"The sole question before the Court is whether the McEntires, appellees in the case of *Vernon v. McEntire,* 339 S. W. 2d 855, have made improvements on the land in controversy since the Decree of this Court and if so, whether they are entitled to be compensated for said improvements in addition to being compensated for taxes and insurance premiums they paid. Also, the question of rents due the Vernons is before the Court."

At this hearing it was agreed that the record on the first appeal would be considered as a part of the record on this appeal, but testimony was also introduced by both

sides on the issues as above defined. It is agreed by both parties that the Vernons owe the McEntires the sum of $3,100 (as principal) on the purchase price of the land.

At the conclusion of the hearing the trial court, after first fully setting out its reasons, found the account between the parties to be as follows:

*Appellants owe appellees*

1. $3,100.00    Balance on land
   592.57    6% interest, 1-1-58 to 3-31-61

2. 2,000.00    For permanent improvements

3. 531.52    1958-1960 taxes
   68.37    6% interest to 3-31-61
   $6,292.46    Total

*Appellees owe appellants*

1. $ 400.00    Rent on land
   6.00    6% interest, 1-1-61 to 3-31-61

2. 65.00    House sold from land
   3.65    6% interest, 4-17-60 to 3-31-61

3. 137.50    Costs, first appeal
   2.38    6% interest, 12-15-60 to 3-31-61
   $ 614.53    Total

Accordingly the trial court decreed it would be necessary for appellants to pay appellees the sum of $5,677.93 in order to redeem the land, giving appellants 10 days to deposit said amount in the registry of the court, otherwise fee simple title would vest in appellees.

Appellants in prosecuting this appeal object to only two items in the decree rendered by the trial court. One is the $2,000 allowed appellees for improvements and the other is the date from which interest was allowed on the $3,100 balance.

*One.* We agree with appellants' contention that appellees are not entitled to reimbursement for money spent in making improvements on the land. We reach this conclusion because we find no evidence in the record

to support a finding that appellees acted in good faith (as defined by this Court) when they made the improvements. It may be conceded, for the purpose of this opinion, that appellees spent $2,000 in clearing, draining, ditching, etc. on the 80 acres of land, but we do point out that the amount of recovery for improvements under the Betterment Statute is based on the *enhanced value* of the land and not on the cost of improvements. See: *Wallis* v. *McGuire,* 234 Ark. 491, 352 S. W. 2d 940. We find no evidence of enhanced value in this case.

There are two ways or theories by which appellees could seek recovery for improvements in this case, providing, of course, they had proven the enhanced value of the property. One, under Ark. Stats., § 34-1423 (commonly known as the Betterment Act) and the other would be to enforce an equitable right, as recognized in *Foltz* v. *Alford,* 102 Ark. 191, 143 S. W. 905. However, in either event, there can be no recovery for improvements unless made in good faith. Therefore, it is in order now to find out how this Court has defined ''good faith'' when used in this connection.

A case closely in point on principle is *Douglass* v. *Hunt,* 98 Ark. 320, 136 S. W. 170. In that case Hunt testified:

''. . . he was advised by attorneys of well known learning and integrity that his deed from Lovejoy conveyed the title in fee simple, and that he occupied and improved the land in the honest belief that he had a perfect title. He testified, however, that both before and after he purchased the land from Lovejoy he received information that appellants, who were the children of Mrs. Hackney, were going to lay claim to the land at her death.''

There, in denying Hunt's claim for improvements, we said: '' 'It must be an honest belief and an ignorance that any other person claims a better right to the land.' ''

In the case of *Graves* v. *Bean,* 200 Ark. 863, 141 S. W. 2d 50, the Court, in dealing with this same question, made the following statement:

"Cases as to the good faith required are illustrated by such authorities as *Patton* v. *Taylor,* 144 Ark. 254, 224 S. W. 49; *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88; *Foltz* v. *Alford,* 102 Ark. 191, 143 S. W. 905, Ann. Cas. 1914A 236.

"One chargeable with notice as to the kind of title he holds certainly may not, under the foregoing authorities, make such improvements as will impair the title in fee."

In the same connection the Court also said:

"It can serve no beneficial purpose or interest to enter upon any extended discussions of these matters as her estate must fail in the event she did not make the improvements under color of title or in event that she did not make them in that good faith within the meaning of that expression as defined."

In *Patton* v. *Taylor,* 144 Ark. 254, 222 S. W 49., the test of good faith was put this way:

"To entitle an occupant to remuneration for his improvements, the test of good faith is: Did he make them in the honest belief that he was the true proprietor and in ignorance that any other person claimed a better right to the land?"

Likewise, in the case of *McDonald* v. *Rankin,* 92 Ark. Ark. 173, 122 S. W. 88, the Court, after reviewing at length many cases on the meaning of good faith, said:

"From all these cases it will be seen that the cardinal requisite that the occupant should possess is good faith, and an honest belief in the title under which he occupies the land, and an ignorance of his title being questioned by another who claims a better right, in order for him to be entitled to the benefits of the statute."

The meaning of good faith was very clearly restated in *Welch* v. *Burton,* 221 Ark. 173, 252 S. W. 2d 411, this way:

"The statute governing betterments is Ark. Stats. 34-1423, and runs in favor of anyone believing himself to be the owner. This has been interpreted to refer to

anyone who acts in good faith and our cases define good faith, and places the burden of proof on the claimant. *Greer* v. *Fontaine*, 71 Ark. 605, 77 S. W. 56. In *Beard* v. *Dansby,* 48 Ark. 183, 2 S. W. 701, it was said that good faith consists of 'an honest belief and an ignorance that any other person claims a better right to the land'."

Applying the definition of the words "good faith" as so clearly set forth in the previously cited cases, we cannot escape the conclusion that appellees were not acting in good faith when they made the improvements for which they seek recovery here. As stated in the *Burton* case, *supra,* the burden was on appellees to prove good faith. It can hardly be seriously contended that appellees did not know appellants were claiming title to the land at the very time they (appellees) were making the improvements thereon. The pertinent facts on that question are set out below.

The earliest date any improvements were made by appellees was in February, 1960 after taking possession of the land in January of that year. Did appellees know in February, 1960 that appellants were claiming title to the 80 acres? Obviously the answer is that they did know. The record on the first appeal which is a part of the record on this appeal, shows that on January 30, 1959 appellants filed a complaint against appellees in which they asked the court to require appellees to convey title to them. It also shows that on November 10, 1959 the trial court refused the relief asked for by appellants. It further shows that on November 30, 1959 appellant filed a notice of appeal to this Court. Appellees do not disclaim knowledge of appellants' intention to appeal nor are they in any position to do so, because Section 3 of Act 555 of 1953 required the clerk to give them written notice. Therefore when appellees began making improvements on the land some two months later (February, 1960) they did know appellants were still claiming title to the land, and also that appellants were prosecuting that claim in court. That being true, appellees proceeded to make improvements at their own risk, and it cannot

be said they did so in "good faith" as those words have been defined by this Court.

*Two.* The trial court also erred in requiring appellants to pay interest on the balance of $3,100 from January 1, 1958. The trial court fell into this error because it found appellants had never made a tender of payment to appellees. In our opinion on the first appeal we made the specific finding that appellants did make such tender, and that finding is not subject to change after the opinion became final. Appellants cannot be charged with interest on the $3,100 after the tender was made. Although appellants necessarily made the tender before they filed the original complaint on January 30, 1959 yet, in the absence of proof of the exact time, we will give appellees the benefit of the uncertainty and fix the date of tender as of January 30, 1959. This means that appellants are charged with interest from January 1, 1958 to January 30, 1959 but not thereafter.

Except for the two items above discussed the decree of the trial court is affirmed.

For the errors above indicated and to that extent the decree is reversed, and the cause is remanded with instructions to enter a decree not inconsistent with this opinion.

Reversed and remanded.

HARRIS, C. J., and McFADDIN, J., dissent.

ED. F. McFADDIN, Associate Justice, dissenting. I respectfully dissent from the reversal because I would affirm in all respects the Decree of the Chancery Court; and here are my reasons.

I. *The $2,000.00 For Improvements.* This amount should be allowed the appellees under the doctrine of unjust enrichment; *i.e.*, under the facts here, the appellants would be unjustly enriched to receive the benefit of the appellees' labors and expenditures without paying therefor. In 46 American Jurisprudence 99, under the topic "Restitution and Unjust Enrichment" the rule is stated:

"It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. . . . Unjust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss. . . . Among the particular situations and instances in which the application of the foregoing doctrines and remedies has been considered may be mentioned . . . the construction of improvements on the land of another, . . ."

The McEntires expended the $2,000.00 improving the property, not of their own volition but because they were required to do so in order to keep the property in workable condition. The testimony showed that the Cousart Drainage Ditch ran through the property, and the Cousart Drainage District had a dragline clean out its ditch and push the dirt back on the land here involved; and the McEntires were obliged to have a bulldozer spread this spoil bank over the land in order that it could be farmed. The $2,000.00 was expended in spreading out the spoil bank over the land and opening up the laterals and ditches so that the land could be farmed. The McEntires didn't deliberately undertake these improvements. They were merely trying to save the usable character of the farm, and if this $2,000.00 item doesn't come within the "betterment" decisions cited by the Majority, it certainly comes within the rule of "unjust enrichment". I think the Chancellor was correct in allowing the McEntires the $2,000.00.

II. *Interest on the $3,100.00.* I think the Trial Court was correct in allowing the McEntires interest on the $3,100.00. It is true that prior to the first trial the

Vernons tendered $3,100.00 to the McEntires, but there is no evidence in the record, in either the first trial or this one, that the Vernons kept such tender alive. To offer the money is a tender; but the law requires that the tender be kept alive in order to stop the running of interest; I cannot find any evidence in the record in either trial that the Vernons ever kept the tender alive. In *Abbott* v. *Herron,* 90 Ark. 206, 118 S. W. 708, Judge Battle said, with regard to keeping tender alive:

"It is true that he tendered to plaintiff fifteen dollars, which was refused. But this is not sufficient. 'After a tender is duly made, it must, to preserve its legal effect, be kept good.' *Kelly* v. *Keith,* 85 Ark. 30, 32. The defendant denied that he was indebted to plaintiff, but said he had tendered to him fifteen dollars. He made no offer to keep it good by paying it into the registry of the court or otherwise. He was content with having made it at two different times. He did not renew it in his answer."

Since the Vernons did not keep the tender alive by paying it into the Registry of the Court or otherwise, then the McEntires were entitled to interest as fixed by the Chancery Court.