EQUIFAX, INC.,

v.

A. D. LUSTER, David Wilkens & Mike Kinard, Farmer's Seafood Company, Inc., Bank of Northeast Arkansas, First National Bank of Poinsett County, Arkansas Louisiana Gas Company, First Security Bank of Searcy, Paul L. Simpson & Norma Simpson.

No. J–78–C–74.

United States District Court, E. D. Arkansas, Jonesboro Division.

Nov. 9, 1978.

Supplemental Opinion Nov. 22, 1978.

---

Stephen Reasoner of Barrett, Wheatley, Smith & Deacon, Jonesboro, Ark., for plaintiff.

Bill Bristow, Jonesboro, Ark., for Luster.

Randell Ishmael, Jonesboro, Ark., for Wilkens, Kinard, Simpsons.

Kelly Webb, Trumann, Ark., for Farmer's.

Parker & Henry, Jonesboro, Ark., for Bank of N. E. Ark.

L. D. Gibson, Trumann, Ark., for 1st Nat. Bank of Poinsett Co.

Anthony Bartels, Jonesboro, Ark., for Arkla Gas.

Boyett & Morgan, Searcy, Ark., for 1st Security Bank of Searcy.

## MEMORANDUM OPINION

ARNOLD, District Judge.

This is a suit in equity by Equifax, Inc., in the nature of interpleader. The principal question is the distribution among various claimants of the fund for which the plaintiff made bond when it instituted suit. The case is before the Court on pleadings and briefs amounting in substance to motions for summary judgment by all parties.

On December 10, 1976, A. D. Luster, one of the defendants here, recovered a judgment in this court against Equifax, Inc.[1] The principal amount of the judgment, after appellate review and the filing of a remittitur, is $50,000. The remittitur was filed on June 15, 1978. Various judgment creditors of Luster, all of whom have been made defendants in this interpleader suit, have served writs of garnishment on Equifax, demanding amounts that aggregate considerably more than $50,000. In addition, the attorneys who represented Luster against Equifax claim a statutory lien for attorneys' fees and costs expended. In the face of these conflicting claims, not all of which could be satisfied out of the money it owed Luster, Equifax sued for interpleader on June 23, 1978. A bond was filed with the Clerk of this Court to assure payment of the amount of the plaintiff's indebtedness to Luster, as the Court might direct. Equifax asks that the precise amount of its liability be determined, that it be discharged from any further indebtedness to Luster or any other defendant, and that it be awarded an attorney's fee and costs. Two main groups of issues on the merits are thus presented: (1) the total amount of Equifax's liability; and (2) the proper division of this amount among the claiming defendants. This court has jurisdiction under 28 U.S.C. § 1335. At least two of the claimants are of diverse citizenship.

## I. THE AMOUNT OF THE FUND TO BE DISTRIBUTED

The principal amount of the judgment recovered by Luster against Equifax is $50,-000. The judgment was entered on December 10, 1976. What rate of interest should be applied to this indebtedness? Arkansas judgments have traditionally borne interest at the rate of six per cent. per annum. In 1975, however, the General Assembly, perhaps reacting to the generally higher prevailing cost of money, passed Act 474, Sec-

1. At various points the parties refer also to A. D. Luster d/b/a A's Fishhouses, or to A's Fishhouses, Inc. These entities are apparently in- terchangeable with Luster for present purposes.

tion 1 of which is now codified as Ark.Stats. § 29–124 (Supp.1977). This statute provides that judgments shall bear interest at the rate of ten per cent. per annum from entry of judgment "until . . . satisfaction be made . . . ." The Court entering the judgment may reduce the rate of interest, but not below six per cent., in its discretion. As a technical matter, this decision should probably be made in the cause in which the judgment was entered, but that cause and this one are in the same court, and the Judge who tried the earlier case has since died. There is no reason, therefore, as a practical matter, why the decision as to interest should not be made now.

■ It is true, as Equifax argues, that the remittitur ordered on appeal shows that the appeal and the consequent delay in satisfying the judgment were not unreasonable. The appeal and its disposition also show, however, that Equifax has been indebted to Luster (or to his creditors, as the case may be) in at least the amount of $50,000 since December 10, 1976, since this is the amount of the judgment remaining in effect after the remittitur was filed. The purpose of interest on judgments is to compensate the judgment creditor for the fact that he has not had the use of a certain sum of money that has been adjudged to be his. When defendant chose to appeal instead of paying the judgment at once, it of course knew that interest would run during the entire time on whatever sum was ultimately found to be owed. The Arkansas statute appears to lay down ten per cent. as a general rule. Interest rates have fluctuated somewhat during the last two years, but on the whole they have been at abnormally high levels. The Court is of the opinion that a rate of ten per cent. should be applied.

■ Up to what date should the interest run? Is the running of interest cut off by the filing of this interpleader suit on June 23, 1978? The Arkansas statute, already quoted, specified that interest shall run "until . . . satisfaction be made . . . ." When Equifax filed this suit, it did not pay into the court the amount of Luster's judgment against it. Instead, it filed a corporate surety bond to assure the Court and the other parties that whatever amount should ultimately be found due would be paid. Under 28 U.S.C. § 1335, the filing of such a bond is a proper way in which to commence suit for interpleader, just as payment into court of the fund claimed would have been. But bond is not payment. The obligor on the bond, here Equifax, retains the use of its money, and the various claimants continue to be exposed to the risk that Equifax and its corporate surety might become insolvent.

*Great Lakes Transit Corp. v. Marceau,* 154 F.2d 623 (2d Cir. 1946), is in point. There, Marceau recovered a judgment against Great Lakes for $4,500. Both Marceau and several sets of lawyers claimed an interest in the judgment. Great Lakes filed suit for interpleader and made bond for $6,000. The Court held that interest continued to run on the judgment until actual payment.

> Plaintiff chose to retain use of the $4,500, and rather than pay the money into court, it gave a bond. Plaintiff is entitled to receive the cost of the premiums on that bond, but not to an order stopping the running of the interest against it.

154 F.2d at 626–27. See also *Stuyvesant Ins. Co. v. Dean Constr. Co.,* 254 F.Supp. 102, 113 (S.D.N.Y.1966), *aff'd per curiam,* 382 F.2d 991 (2d Cir. 1967); *United States v. McDonald Grain & Seed Co.,* 135 F.Supp. 854 (D.N.D.1955).

■ The cases cited by Equifax are not to the contrary. *Vernon v. McEntire,* 234 Ark. 995, 356 S.W.2d 13 (1962), holds that a tender stops the running of interest, but it is hornbook law that the tender must be kept good or alive, as the dissenting opinion of McFaddin, J., points out. 234 Ark. at 1003, 356 S.W.2d at 17. One way of keeping the tender good, of course, is to pay the money into court. This is not the same thing as the creditor's having the money in his own hands, to be sure, but is better than a bond, which, after all, is simply a promise to pay. An analogous point is made in

*Murphy v. Travelers Ins. Co.,* 534 F.2d 1155, 1164–65 (5th Cir. 1976), also cited by Equifax. *Murphy* holds that payment into court by a stakeholder is an unconditional tender terminating the right to interest. The stakeholder has ceased to exert dominion over money. That is not the case where the stakeholder has merely made bond. The Court therefore holds that interest on the $50,000 judgment, which began to run at the rate of ten per cent. per annum on December 10, 1976, will continue to run until the amount of the judgment is paid either into court or directly to the parties entitled to receive payment.

 Should Equifax, as the interpleading plaintiff, receive any allowance for attorneys' fees and costs? Some of the claimants, resisting this request, claim that the filing of this interpleader suit was unnecessary or even improper. Equifax, they say, should simply have paid its creditor, Luster, and let the other claimants pursue whatever remedies they might have. No doubt there was a time, immediately after the entry of judgment against it, when Equifax could have paid Luster and avoided the other conflicting claims now before the Court. That time was very short indeed. In was only five days after the entry of judgment that the first writ of garnishment was served on Equifax by one of Luster's creditors. In the face of this and subsequent garnishment attempts, it would have been imprudent, to say the least, for Equifax to pay Luster and ignore the other claims to the fund. A writ of garnishment after judgment, when served on a garnishee, is more than the assertion of a personal liability. Under Arkansas law, to be fully discussed later in this opinion, service of a writ of garnishment establishes a lien in favor of the garnishor against whatever the garnishee has in his possession belonging to the debtor. Thus, if Equifax, after having been served with one of these garnishments, had proceeded to pay Luster, it would have run a substantial risk of double liability, the very grievance that interpleader is supposed to remedy. Equifax acted, at least in part, as a disinterested stakeholder. The Court believes that its suit was filed in good faith and, presumably, on advice of counsel, and that it resisted payment only to protect itself against other claims. This is therefore a proper case for payment of an attorney's fee from the fund interpleaded. *New York Life Ins. Co. v. Miller,* 139 F.2d 657 (8th Cir. 1944); *National Life & Acc. Ins. Co. v. Bruce,* 309 F.Supp. 1314 (W.D.Mo.1970); *Tollett v. Phoenix Assur. Co. of N. Y.,* 147 F.Supp. 597, 605–06 (W.D. Ark.1956). The amount of the fee should be modest, both in view of the relatively routine services involved and in order not to deplete the fund, which belongs to the claimants, not to the stakeholder. *Hunter v. Federal Life Ins. Co.,* 111 F.2d 551, 557 (8th Cir. 1940).

 In addition, any attorney's fee should be limited to compensation for those services strictly related to the interpleader itself. It should not include attorney's time devoted to limiting the liability of their own client—time spent, for example, in briefing the issues of interest or the attorney's fee itself. Most of Equifax's four-page brief is devoted to issues of this type. The services of Equifax's attorneys have been limited to the filing of a complaint and this brief. In the opinion of the Court, a fee of $250 plus costs reasonably expended should be allowed, to be paid out of the interpleaded fund. For this purpose, costs include any premiums reasonably incurred in connection with the interpleader bond.

## II. DISTRIBUTION OF THE FUND AMONG THE VARIOUS CLAIMANTS

Before describing the claims of Luster's various judgment creditors and attempting to fix priorities as among them, we notice and discuss first the claim of Luster's attorneys to their fee for representing it in the action against Equifax. Both Luster and his attorneys, Messrs. Seay and Bristow, state that they had an oral contract for the payment of a contingent fee of 40 per cent. of any judgment recovered, together with the attorneys' costs reasonably expended in connection with the case. The percentage

was to be increased to 50 if an appeal came to pass, which it did. One of the claimants objects that the contract for this fee was not in writing and that the services rendered by the attorneys have not been substantiated by proof in any detail. It is argued, in addition, that the attorneys are not parties to this suit and are therefore not "subject to the orders of the Court."

Our inquiry into this point must begin with the Arkansas statute, Ark.Stats. § 25–301 (Repl.1962). The statute provides that the compensation of attorneys "is governed by agreement, expressed or implied, which is not restrained by law." Attorneys are given a lien on the cause of action of their client, and this lien "attaches to any . . . judgment . . . and the proceeds thereof in whosoever [sic] hands they may come . . . ." The lien attaches "from and after the commencement of an action" in which the attorney appears for his client and signs a pleading, and in which the attorney has been employed to represent his client. An action commences, for this purpose, when summons is issued. The lien includes not only fees proper but also all expenses properly incurred by the attorneys. *E. g., McNeill v. Percy,* 201 Ark. 454, 145 S.W.2d 32 (1940).

All of the requirements of the statute have been met in this case. There is no requirement, either in the statute or at common law, that a contract for the compensation of attorneys be in writing. *Cf. Consolidated Underwriters of S. C. Ins. Co. v. Bradshaw,* 136 F.Supp. 395, 403 (W.D. Ark.1955), an interpleader case in which Judge Miller honored a lien for attorneys' fees based upon a contract that was originally oral. It is undisputed that Don Seay signed the pleading initiating Luster's action against Equifax and that he was employed by Luster for this purpose. The statutory lien for fees and expenses therefore attached when summons on Equifax was issued in that case. This lien is superior to that of garnishments served thereafter. *Consolidated Underwriters, supra.*

It would perhaps have been better if Equifax had made the attorneys named parties, but this omission is not fatal to their claim. Their rights under the statute have attached, and there is no reason why the Court in this suit may not recognize and enforce these rights. They are before the Court as attorneys for the defendant Luster, and the facts with respect to the fee and costs claimed are sufficiently shown by affidavit of Luster and the attorneys. In order that the judgment may be binding on them for res judicata purposes, an order will be entered making the attorneys parties. It is not true, incidentally, that their absence as parties means that they are not "subject to the orders of the Court." Not only are they before the Court as representatives of Luster, their depositions could have been taken at any time by any party to this case. The only proof on the subject of attorneys' fees and costs is provided by the affidavits of Luster and his attorneys. No counter-affidavits have been filed, and no discovery to impeach the affidavits supporting the claim for fees and costs has been attempted, though there has been ample opportunity to do so. No claim is made that the fee agreement is contrary to law or public policy. There is therefore no genuine issue of material fact with respect to the claim for attorneys' fees and costs, and the lien for these amounts will be sustained and enforced. For the reasons already given, it has priority over the other claims pressed herein. This result is only fair. Were it not for the efforts of the attorneys, there would be no fund to dispute. Thou shalt not muzzle the ox that treadeth out the corn.

The first payment to be made out of the fund, therefore, after the attorneys' fees and costs awarded above to Equifax, will be to Seay & Bristow. They are to receive $2,829.70 in costs, according to a list (which is not controverted) attached to one of Luster's pleadings, plus 50% of the remainder.

At this point it becomes necessary to state the facts surrounding the claims of each of the other defendants, all of whom are judgment creditors of Luster. The Court will set out the nature of each claim

and the steps that each claimant has made to enforce it.

*Bank of Northeast Arkansas.* On October 22, 1975, the Bank of Northeast Arkansas recovered judgment against Luster in the amount of $11,037.50 plus costs, with interest thereon at the rate of 10% per annum. A judgment was entered by the Circuit Court of Craighead County, Arkansas, Western District. In an effort to collect this judgment, the Bank of Northeast Arkansas took the following steps: (1) garnishment issued and served upon one Hoy as garnishee on December 3, 1975; (2) two writs of execution levying on Luster's stock in A's Fish Houses, Inc., an Arkansas corporation, one served on December 18, 1975, and the other served on December 19, 1975; (3) garnishment issued and served on Equifax on December 15, 1976, at 5:00 p. m. (just a few days after the entry of judgment for Luster against Equifax); and (4) execution served by the Sheriff of Craighead County on June 28, 1978, by placing a copy of it in the file of this case in the office of the Clerk of this Court. This writ of execution gives the amount of costs embodied in Bank of Northeast Arkansas's judgment as $36.65.

*First Security Bank of Searcy.* On May 18, 1977, the First Security Bank of Searcy, Arkansas, recovered a judgment against Luster in the amount of $12,116.09. It sought to enforce the judgment by garnishment served on the Clerk of this Court on August 14, 1978.

*Farmer's Seafood Company, Inc.* On January 24, 1976, Farmer's Seafood Company, Inc. recovered a judgment against Luster in the amount of $12,986.50 and costs, plus interest from date of judgment at the rate of 10% per annum. This judgment was entered by the Circuit Court of Craighead County, Arkansas. Farmer's has taken the following steps to enforce the judgment: (1) garnishment served on Equifax at 8:00 a. m. on December 18, 1976; (2) garnishment served on the Clerk of this Court on August 24, 1978; and (3) garnishment served on the Clerk of this Court on October 10, 1978, by personal service under Federal Rules of Civil Procedure 4(d)(5).

*First National Bank of Poinsett County.* The First National Bank of Poinsett County, Araknsas, bases its claim on a writ of garnishment served on Equifax on December 21, 1976, alleging a debt in the amount of $201.15 plus interest and costs. It is unnecessary to discuss this claim further, as the First National Bank has disclaimed any interest in the interpleaded fund. The order disposing of this case should therefore dismiss the complaint as to this party, without prejudice to its rights to pursue Luster by any other means available.

*Arkansas-Louisiana Gas Company.* This party recovered a judgment against Luster in the approximate amount of $11,000. In an effort to enforce this judgment, it instituted suit in the Chancery Court of Craighead County, Arkansas, Western District, on June 14, 1978. Luster and Equifax were made defendants. A garnishment and an attachment were issued in connection with this suit and served on Equifax.

*David Wilkins and Mike Kinard.* On March 31, 1976, David Wilkins and Mike Kinard recovered judgment against Luster in the amount of $11,000, plus costs of $18.40, with interest thereon at the rate of 6% per annum. This judgment was entered by the Circuit Court of White County, Arkansas, and was recorded in Craighead County on November 19, 1976. Wilkins and Kinard took the following steps to enforce their judgment: (1) garnishment served on Equifax on December 18, 1976; and (2) execution served on the Clerk of this Court on June 26, 1978.

*Paul L. Simpson and Norma Simpson.* On August 20, 1976, Paul L. Simpson recovered judgment against Luster in the amount of $5,780, plus costs of $34.00 with interest thereon at the rate of 6% per annum. This judgment was entered by the Circuit Court of Wayne County, Missouri and was recorded in Craighead County, Arkansas on August 1, 1977. The Simpsons had a writ of garnishment served on Equifax on August 5, 1977.

What is to be made of this welter of judgments, executions, garnishments,

and attachments? We begin by stating certain first principles. A judgment, in and of itself, is not a lien on the personal property of the judgment debtor. The following language from Judge Miller's opinion in *Consolidated Underwriters of S. C. Ins. Co. v. Bradshaw,* 136 F.Supp. 395 (W.D.Ark.1955), is in point:

> "Under the Arkansas law a judgment does not constitute a lien upon personal property until execution or garnishment is issued and the writ delivered to the officer in the proper county to be executed."

Although this language seems to say that it is the issuance of the writ and its placement in the hands of an officer in the proper county to be served that matters, the Supreme Court of Arkansas has made clear in a number of opinions that the crucial fact, at least so far as garnishment, as opposed to execution, is concerned, is service of the writ on the garnishee. It has been held several times that the lien of a garnishment attaches when process is served on the garnishee.

> It follows therefore that, as between general creditors and a particular debtor, the one obtaining and first serving a writ of garnishment upon a third party owing the debtor will acquire a prior and paramount lien thereon to the extent of his claim.

*Good v. State Line Oil & Gas Co.,* 144 Ark. 329, 331, 222 S.W. 354, 355 (1920). *Accord, St. Louis S.W. Ry. v. Vanderberg,* 91 Ark. 252, 120 S.W. 993 (1909); *Bergman v. Sells & Co.,* 39 Ark. 97 (1882).

Four writs of garnishment are shown to have been served on Equifax after the entry of judgment against it in favor of Luster: one served by the Bank of Northeast Arkansas on December 15, 1976; one served by Farmer's Seafood Company at 8:00 a. m. on December 18, 1976; one served by Wilkins and Kinard later on December 18, 1976; and one served by Paul L. and Norma Simpson on August 5, 1977. The other parties, especially the First Security Bank of Searcy, vigorously dispute the efficacy of these garnishments. They insist that under

Arkansas law a judgment creditor, here Equifax, is not subject to garnishment. This is the most important question in the case, and the Court will address it first.

Two separate statutes broadly authorize garnishment. Under Ark.Stats. § 31–142 (Repl.1962), garnishment after judgment is available "in all such actions," that is, in all civil actions. And under Ark.Stats. § 31–501 (Repl.1962), garnishment is available "in all cases where any plaintiff . . . may have obtained a judgment before any of such courts . . .," that is, courts of record. Both statutes on their face would permit the remedy to be used in the instant situation. Equifax owed Luster money. Luster's creditors attempted to use garnishment to reach this obligation. The fact that Equifax's obligation was embodied in a judgment does not, at least on the face of the statutes, appear to matter.

A substantial question, however, is raised by a number of cases interpreting the statute. The first such case cited is *Trowbridge & Jennings v. Means,* 5 Ark. 135 (1843). The case arose under Section 1 of Chapter 69 of the Revised Statutes, which appears to be a precursor of Ark.Stats. § 31–501. A writ of garnishment had been served on Trowbridge & Jennings, as partners, claiming that they were indebted to one Hartley, who in turn was liable on a judgment to Means. Trowbridge & Jennings set up by way of defense that their debt to Hartley was embodied in a judgment, on which execution had issued. A judgment against Trowbridge & Jennings as garnishees was reversed by the Supreme Court of Arkansas.

The Court first observed that the statute was general in its terms and apparently embraced every class of "credits" in one person's hands belonging to another. The Court added, however, that the garnishment statute was in derogation of the common law and should therefore be strictly construed. A review was then made of a number of authorities, primarily those of the Supreme Judicial Court of Massachusetts, and the Court held in the end that Trowbridge & Jennings, as judgment debt-

ors, could not be reached by garnishment. Such a procedure, it said, would expose the judgment debtor to double liability. He might be held liable both to his judgment creditor and to the garnishor. He could protect himself, perhaps, by applying for some kind of extraordinary remedy, but he ought not to be put to that trouble and expense. In addition, if the garnishee is liable at all, he would be liable from the time of the service of the writ of garnishment on him. Between that time and the day for answering the garnishment, his property could be exposed to execution and sale at the instance of his judgment creditor, and he would be left powerless to prevent such an event. Further, the judgment on which the garnishment was sued out might itself be defective in some way. On the whole, these possibilities of conflict and multiple liability persuaded the Court to hold that garnishment could not be used against Trowbridge & Jennings in their capacity as judgment debtors.

The case was followed by two other decisions also published in Vol. 5 of the *Arkansas Reports.* In the first such case, *Fowler v. McClelland,* 5 Ark. 188 (1843), the Court further explained the rule: "Such judgment debtor would be always compelled to submit to great vexation and harassment, and, in many instances, be forced to resort to a court of equity for protection, if such proceeding by garnishment against him was allowed . . . ." 5 Ark. at 189. And in *Tunstall v. Means,* 5 Ark. 700 (1843), the reasoning of *Trowbridge* was applied a *fortiori* where the debt of the garnishee had not only passed into judgment, but an execution on it had been levied upon his property, thus to a certain extent satisfying the judgment. In such a case, the Court said, "there was nothing upon which the garnishment could operate. The property of the debtor was divested by the levy and vested in the sheriff in trust for the creditor. It was thus in *custodia legis* and beyond the reach of the garnishment." 5 Ark. at 701.

That this rule is not to be universally applied in a wooden manner is shown by *St. Louis, I.M. & S. Ry. v. Richter,* 48 Ark. 349, 3 S.W. 56 (1887). There, the Court carefully examined the reasons for the rule in *Trowbridge* and concluded that they did not apply in the case before it. The judgment debtor, a railroad, was in the process of appealing the judgment to a circuit court for a trial de novo. The judgment had been entered by a justice of the peace, and a supersedeas bond had been filed to suspend the execution of the judgment pending the appeal. The Court found that the garnishee railroad had ample means to protect itself against double liability. It was not now subject to a present judgment in favor of the garnishor's debtor, because the cause was to be tried anew in the circuit court. The railroad could thus shield itself from the possibility of having to pay both its judgment creditor and its judgment creditor's creditor. There was no danger of conflict of jurisdictions, because no execution could issue on the suspended judgment. The circuit court on the appeal could render a new judgment that would avoid all complications. In other words, the Court applied the great maxim of the common law, *Cessante ratione, cessat ipsa lex.* When the reason for the rule ceases, the rule itself ceases to apply.

The early cases are still good law in the ordinary situation, as the Supreme Court recently had occasion to note in *McIlroy Bank v. First National Bank of Fayetteville,* 252 Ark. 558, 480 S.W.2d 127 (1972). *Richter* was distinguished: "That case was not concerned with a final judgment." 252 Ark. at 560, 480 S.W.2d at 128. Because the judgment was not final, it could not at the relevant time be enforced against the judgment debtor who had been garnished, and he was not therefore exposed to double liability.

These rules of law were developed entirely within the state-court system. The fact that that system had, and still does have, separate courts of law and equity may account for some of the underpinning of the rule in *Trowbridge.* If a judgment debtor not only has to seek some special remedy, but has to do it in a completely different court, in order to protect himself against double liability, the burden imposed upon

him by making him subject to garnishment is arguably greater. Perhaps the state rule should not automatically be applied in this federal suit in equity. Law and equity have been merged in the federal system since 1938. In addition, *Trowbridge* and its progeny are all concerned with the protection of the judgment debtor. The judgments involved in all of those cases were state-court judgments. The judgment involved here was entered by this Court, a federal court, in the suit by Luster against Equifax. Finally, the judgment debtor, Equifax, does not really challenge the validity of these garnishments. It is in doubt about their validity, and this is one of the reasons that it brought this interpleader suit, but all Equifax is really interested in is paying its money into court and securing a discharge good against all claimants. It is other claimants, rather than the judgment debtor, who seek to contest the garnishments, and even if they have standing to do so, their cries of concern about Equifax's possible double liability are less persuasive than if they came from the judgment debtor itself. In view of all these circumstances, it may well be that the issue of the garnishments' validity should be decided by federal decisional law. If it were, the garnishments would be upheld, simply because there is no good reason to hold otherwise. This court of equity, in an interpleader suit in which all parties in interest can be and have been joined, can do complete justice, and protect Equifax from double liability in the process.

 It is not necessary, however, in the instant case to decide that state law does not govern the issue of the garnishment's validity, because even if state law does apply, the same result would, in the Court's view, follow. The judgment here is a final one, but the point is that execution cannot issue on it as long as this Court sits to grant relief in interpleader. Just as in *Richter,* the judgment debtor is protected from double liability. This Court believes that if the present situation were presented to the Supreme Court of Arkansas, it would, based upon all its precedents, including *Richter,* uphold the garnishments.

Here, the interpleader suit has already been filed, the validity of the garnishments is attacked only collaterally by rival claimants, and the Court is able to protect all parties, including the garnishee. Either under the law of Arkansas, therefore, or under federal decisional law, the garnishments are valid, and their various liens attached when they were served.

Arkansas-Louisiana Gas Company argues, in addition, that the garnishments served on Equifax are void because contrary to the requirements of *DeSoto, Inc. v. Crow,* 257 Ark. 882, 520 S.W.2d 307 (1975). There, writs of garnishment which contained no notice that failure to answer could result in a judgment against garnishee and which required garnishee to appear and answer within ten days were held fatally defective. A garnishee, the Court said, must be given 20 days after service within which to answer, and must also be given clear notice that failure to answer could result in a judgment by default. This argument is not persuasive. The garnishment served on December 15, 1976, by the Bank of Northeast Arkansas did allow 20 days from service within which to answer and did expressly state "that failure to answer can result in a judgment against garnishee in the amount of the judgment aforesaid . . . ." The garnishment served on December 21, 1976, by Farmer's Seafood Company allowed 20 days within which to answer. It did not contain the required notice that failure to answer might result in the entry of a default judgment, but that omission is immaterial, because Equifax, Inc., actually did appear and answer. The writs of garnishments served at the instance of Wilkins and Kinard and the Simpsons are not in the record, but again the point is immaterial. None of these parties is attempting to enforce a default judgment on its garnishment against Equifax, and Equifax is not claiming that the garnishments are void under *DeSoto.* Equifax has had a full opportunity to set up any defense it wishes against any of these garnishments, and no defense is offered, other than the desire to avoid multiple liability. There is no dispute

about Equifax's indebtedness to Luster, or about Luster's indebtedness to the various garnishors.

The Court's holding that the writs of garnishment served upon Equifax as judgment debtor were effective to establish liens on the money owed by Equifax to Luster makes it unnecessary to rule on many of the issues briefed by the parties. In particular, it is not necessary to consider the effect of the garnishment and writs of execution served by the Bank of Northeast Arkansas in 1975 since, under the holding just explained, this Bank has priority (after the attorneys) in any event. In addition, it is unnecessary to consider any of the later collection efforts of the parties, since the various writs of garnishment served on Equifax are more than sufficient to exhaust the portion of the fund remaining after payment of attorneys' fees.

One word should be added about the various garnishments and executions served on the Clerk of this Court. This suit has some of the attributes of an *in rem* proceeding. Interpleader is instituted by the payment of a fund into court, or by the delivery to the court of a thing claimed. The filing of a bond is simply a substitute for the payment of money. The Court's jurisdiction is limited to the disposition of this fund or thing. Once the fund is exhausted, the Court has no more power to adjudicate the parties' rights *in personam*. The interpleader bond, which stood in place of the fund, was in some sense a *res* in the custody of this Court. The writs of garnishment and execution served upon the Clerk of this Court originated from other courts and sought to assert claims to that *res*. There is a substantial doubt whether this procedure is permissible. *See Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

An order should be prepared embodying the following points: the total amount now owed by Equifax; the award of attorneys' fees and costs to Equifax as previously set out; discharge of Equifax from any further liability to any of the claimants arising out of the subject matter of this suit; an in-junction against prosecution by any claimant of any further claim against Equifax arising out of the subject matter of this suit; the addition of Messrs. Seay & Bristow as parties defendant; dismissal of the First National Bank of Poinsett County as indicated above; and distribution of the remainder of the fund to the following persons in order: Luster's attorneys, the Bank of Northeast Arkansas, Farmer's Seafood Company, and David Wilkins and Mike Kinard. These claims, if the Court's computation is correct, will be more than sufficient to exhaust the fund. The order should further provide that no adjudication is made with respect to any other claims. The order should compute proper amounts of interest and costs in each instance. Counsel for Luster are directed to prepare an order, submit it to all other counsel for approval as to form, and return it to the Court for consideration within ten days.

## SUPPLEMENTAL OPINION

Since this Court's Memorandum Opinion was filed on November 9, 1978, a few matters have been brought to the Court's attention by counsel that deserve discussion.

On page 359 of the previous Opinion there is a description of measures taken by the First Security Bank of Searcy to enforce its judgment against Luster. In addition to the writ of garnishment served on the Clerk of this Court on August 14, 1978, the Court has been informed, and now finds, that other writs of garnishment were served at the instance of First Security Bank. Both of these writs were served on Equifax, one on June 8 and one on June 9, 1977. These additional findings do not change the result in any respect.

The Court was originally informed, through briefs and pleadings, that a writ of garnishment was served on Equifax by Farmer's Seafood Company, Inc., at 8:00 a. m. on December 18, 1976. The time of day is important, because a writ of garnishment was also served on Equifax on December 18, 1976, at the instance of David Wilkins and Mike Kinard. The previous Opinion in this case awards priority to Farmer's Sea-

food Company, Inc., on the basis of its earlier service of garnishment. No time of day was given by Wilkins & Kinard, and the Court assumed that the time would have been given had it been earlier than 8:00 a. m.

Counsel for Farmer's Seafood Company, Inc., and for Wilkins & Kinard have now both informed the Court that Farmer's Seafood's writ of garnishment was not in fact served at 8:00 o'clock in the morning. There is no evidence as to the time of day of service of either of these writs. They were both served on December 18, 1976. The Court will therefore treat the case as though both writs had been served at the same time.

 The result reached in the prior Opinion is unchanged, despite this change in the facts. Farmer's Seafood Company's judgment was obtained in the Circuit Court of Craighead County, Arkansas, and its writ of garnishment was issued by that court. The judgment of Wilkins & Kinard, on the other hand, was obtained in the Circuit Court of White County, Arkansas. That judgment was later recorded in Craighead County, and the writ of garnishment involved in this case was issued by the Circuit Court of Craighead County. In the case of judgments rendered by circuit courts in Arkansas, only the court rendering the judgment has jurisdiction to issue a writ of garnishment. *McGehee Bank of McGehee v. Charles W. Greeson & Sons, Inc.*, 223 Ark. 18, 263 S.W.2d 901 (1954); *Hervey v. Farms, Inc.*, 252 Ark. 881, 481 S.W.2d 348 (1972). Garnishment is a creature of statute, and the Supreme Court of Arkansas has authoritatively interpreted the statute. The defect is jurisdictional, cannot be waived, and may even be raised for the first time on appeal by a court on its own motion. This is the kind of defect, therefore, that Farmer's Seafood Company, Inc., as a rival creditor, has standing to raise.

Wilkins & Kinard also argue that the question of validity of their writ of garnishment now raised by Farmer's Seafood Company, Inc., comes too late. It is true that the deadline for the filing of the briefs

occurred quite some time ago, well before the issuance of this Court's previous Memorandum Opinion. Ordinarily, new arguments of law would not be heard at this time. This question, however, arises out of a new state of facts of which the Court has just become aware. Litigation is not a game. The duty of the Court is to do substantial justice. It would be unfair for the Court to allow the record to be corrected in respect of the time of day of service of Farmer's Seafood Company's writ of garnishment, but at the same time to refuse to hear contentions as to the legal validity of the competing writ, contentions that become relevant only when the mistake of fact as to the time of service is corrected.

The conclusions announced in the previous Memorandum Opinion are therefore unchanged. A final judgment is being entered this day to carry out those conclusions.

### JUDGMENT

On consideration of the pleadings, briefs, and letters from counsel, amounting in substance to Motions for Summary Judgment, and in accordance with this Court's Memorandum Opinion filed November 9, 1978, as amended on this 27th day of November, 1978, the Court enters the following judgment:

(1) On December 10, 1976, A. D. Luster recovered a Judgment in this Court against Equifax, Inc. The principal amount of the Judgment, after appellate review and the filing of a remittitur, is Fifty Thousand Dollars ($50,000.00). Various Judgment creditors of Luster, all of whom have been made Defendants in this interpleader suit, have served Writs of Garnishment on Equifax, demanding amounts that aggregate considerably more than Fifty Thousand Dollars ($50,000.00). In addition, the attorneys who represented Luster against Equifax claim a statutory lien for attorneys' fees and costs expended. In view of the conflicting claims, Equifax sued for interpleader on June 23, 1978. Bond was filed with the Clerk of this Court to assure payment of the amount of Plaintiff's indebtedness to Luster.

(2) The Judgment recovered by Luster against Equifax in the amount of Fifty Thousand Dollars ($50,000.00) should bear interest from December 10, 1976, at the rate of ten per centum (10%) per annum until the amount of the Judgment is paid either into Court or directly to the parties entitled to receive payment.

(3) Equifax filed its interpleader reasonably and in good faith. Its attorneys are allowed a fee of Two Hundred and Fifty Dollars ($250.00) plus costs reasonably expended to be paid out of the interpleaded fund herein. The cost shall include premiums reasonably incurred in connection with the interpleader bond.

(4) The attorneys for Luster, Seay & Bristow, should be and are hereby made parties to this suit as defendants, and are awarded their costs laid out and expanded for Luster in the sum of Two Thousand Eight Hundred and Twenty-Nine Dollars and 70/100 ($2,829.70) and are further awarded attorneys' fees of fifty per centum (50%) of the remainder of the fund, less the fee and costs awarded heretofore to Equifax.

(5) The Defendant First National Bank of Poinsett County has filed herein a disclaimer of any of the proceeds due Luster, and therefore the claim of First National Bank of Poinsett County is hereby dismissed.

(6) The balance of the fund, after payment of costs and attorneys' fees to Equifax, and after payment of costs and fees to Seay & Bristow, shall be first paid to the Bank of Northeast Arkansas in satisfaction of its Judgment lien in the amount of Eleven Thousand Thirty-Seven Dollars and 50/100 ($11,037.50), together with accrued interest through November 17, 1978, in the amount of Three Thousand Three Hundred Eighty-Nine Dollars and 87/100 ($3,389.87), plus costs of Thirty-Six Dollars and 65/100 ($36.65) for a total Judgment lien of Fourteen Thousand Four Hundred Sixty-Four Dollars and 62/100 ($14,464.62), together with a daily interest accrual of Three Dollars and 02/100 ($3.02) until paid; the balance of the fund shall be distributed to Farmer's Seafood Company to be applied toward its Judgment in the principal sum of Twelve Thousand Nine Hundred Eighty-Six Dollars and 50/100 ($12,986.50), with accrued interest through November 17, 1978, of Three Thousand Six Hundred Fifty-Four Dollars and 08/100 ($3,654.08), plus court costs of Twenty-Two Dollars and 50/100 ($22.50), for a total Judgment, costs and interest of Sixteen Thousand Six Hundred Sixty-Three Dollars and 08/100 ($16,663.08); if there are funds remaining after payment of the above claims, then the balance shall be distributed to David Wilkins and Mike Kinard.

(7) This Court makes no adjudication with respect to any other claims outstanding against Luster with the exception of those noted herein. Further, the rights of all parties not having their claims satisfied to continue their remedies against Luster are not affected by this Judgment.

(8) Equifax is discharged from any further liability to any of the claimants herein arising out of the subject matter of this suit. An injunction is granted against prosecution by any claimant of any further claim against Equifax arising out of the subject matter of this suit.